PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ALAN D. WEINBERGER; THE ASCII
GROUP, INCORPORATED,
　　　　　　*Plaintiffs-Appellants,*

v.

STEFAN F. TUCKER,
　　　　　　*Defendant-Appellee.*

No. 06-2302

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(1:06-cv-01070)

Argued: September 27, 2007

Decided: December 20, 2007

Before WILKINSON, MOTZ, and GREGORY, Circuit Judges.

Affirmed by published opinion. Judge Gregory wrote the opinion, in which Judge Wilkinson and Judge Motz joined.

## COUNSEL

**ARGUED:** Christopher G. Hoge, CROWLEY, HOGE & FEIN, P.C., Washington, D.C., for Appellants. Deborah Judith Jeffrey, ZUCKER-MAN & SPAEDER, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** Bernard J. DiMuro, DIMUROGINSBERG, P.C., Alexandria, Virginia; Mitchell J. Rotbert, ROTBERT LAW GROUP, L.L.C., Rockville, Maryland, for Appellants. Francis D. Carter, Ellen D. Mar-

cus, ZUCKERMAN & SPAEDER, L.L.P., Washington, D.C., for Appellee.

---

**OPINION**

GREGORY, Circuit Judge:

This case addresses whether the Virginia doctrine of collateral estoppel applies to allegations of legal malpractice. Alan D. Weinberger ("Weinberger") and ASCII Group, Inc. ("ASCII") sued their former lawyer, Stefan F. Tucker ("Tucker"), for fraud, breach of fiduciary duty, and professional negligence. For the reasons outlined below, we affirm the district court's finding that collateral estoppel bars this lawsuit.

I.

Weinberger is the founder and CEO of ASCII. TechnologyNet, Inc. ("TechNet") is a separate corporation, incorporated by Weinberger and others. ASCII retained the Tucker, Flyer, & Lewis law firm in May 1998. At that firm, Tucker was primarily responsible for representing ASCII. When he moved to Venable, Baetjer & Howard, LLP ("Venable") in 2000, Weinberger and ASCII went with him as clients.

Concurrently, Tucker and Venable represented technology investor Lev Volftsun ("Volftsun"). In Fall 2000, at a party at his house, Tucker introduced Weinberger and Volftsun. At that time, TechNet was seeking investors. In January 2001, Tucker arranged a meeting between Weinberger and Volftsun at Venable's office, during which Volftsun agreed to loan TechNet $250,000 and to become a member of the Board. On January 9, 2001, Tucker helped negotiate a bridge note and other terms of Volftsun's loan to TechNet. In conjunction with the January meeting, Tucker sent both parties a waiver letter, stating that with regard to the loan Tucker had only represented Voftsun's interests.[1] The letter, dated January 17, 2001, was intended to apply retroactively to the January 9 meeting.

---

[1] The letter, addressed to "Alan and Lev" stated:

As we discussed—during separate telephone conversations that

In Spring 2001, TechNet began to decline and Weinberger sought to protect his estate, as well as ASCII, from TechNet creditors. Weinberger claims he met with Tucker at Venable, seeking his advice, and that Tucker advised him to create a separate holding company.[2] In the process of creating the holding company, ASCII Technology Holdings, Inc. ("ATH"), Weinberger and ASCII sought the assistance of

---

I have had with Alan (and in some of those, Robert Freer) and with Lev, and in the conference which we all had at the Venable Tyson's [sic] office on January 9, 2001—Venable and in most circumstances I personally have represented (i) Lev and Margo Volftsun in connection with a number of personal matters, including estate planning; (ii) Alan and Lauren Weinberger in connection with a number of personal matters, including estate planning and Alan's contract with TechnologyNet, Inc.; (iii) The ASCII Group, Inc. in connection with the negotiation of its relationship with TechnologyNet, Inc., and the agreements resulting therefrom; and (iv) TechnologyNet, Inc. in connection with some of the issues related to its disassociation with i2. In other words, at one point or another, Venable has represented all of you in connection with one or more matters.

Notwithstanding the foregoing, it is recognized by Lev, Alan, TechnologyNet, Inc. and The ASCII Group, Inc. that, with regard to Lev's $250,000 loan to TechnologyNet, Inc., as evidenced by Bridge Note No. 7, and Lev's acquisition of 175,000 options to acquire TechnologyNet, Inc. stock, Venable, and I personally, have represented only Lev. My role, in large measure, was to review the documentation, obtain the appropriate back-up documents and agreements, and advise Lev of the risks inherent in such a loan. I performed that role prior to and during our meeting on January 9, 2001.

As a condition precedent to my undertaking the foregoing on behalf of Lev, Lev, [sic] Alan, TechnologyNet, Inc. and The ASCII Group, Inc. agreed to waive any actual or potential conflicts of interest. I am sending this letter to you to reflect the same, and I am requesting that you sign a copy of the letter and return it to me.

(J.A. 96-97.)

[2]However, at a deposition in *Volftsun v. The ASCII Group*, Tucker maintained he recalled no such meeting. (J.A. 969-71.)

another attorney, Paul Rogers ("Rogers") of Covington & Burling. Rogers presented the proposal to the TechNet Board on July 13, 2001. In Summer 2001, Weinberger held discussions with board members, including Volftsun, concerning loans to TechNet. Volftsun agreed to loan TechNet an additional $150,000. ASCII was to guarantee both Volftsun's January 2001 and July 2001 loans. Weinberger alleges that he sent Tucker a letter that stated:

> as I have told you and Lev many times, that any language of any possible guarantee of ASCII lasts only until, the holding company is agreed to by vote of stockholders. I would never risk 17 years of my life's work and the livelihood of long term employees and put in jeopardy ASCII, but I am enabling 150 investors of TechnologyNet, Inc., many who I know personally, to obtain some return. As my lawyer, this is very important to me for you to understand.

(J.A. 148.)[3] In September 2001, a memo from ATH was sent to all the TechNet and ASCII shareholders offering to exchange their shares for shares in ATH. According to Weinberger, all the shareholders but Volftsun complied. Weinberger attempted to convince Volftsun to convert his debt into equity, but ultimately failed.

### A. Volftsun v. ASCII Group (ASCII I)

Volftsun, represented by Venable, sued ASCII, ATH, and TechNet (collectively "ASCII") in the Eastern District of Virginia to enforce the guarantee ("the underlying case"). ASCII filed a motion to disqualify counsel, alleging a conflict of interest. Volftsun filed a brief in opposition to the motion to disqualify. The court held a hearing on the motion and denied the motion to disqualify, based on the January 2001 waiver letter. Ultimately, the court found the guarantee binding on ASCII and entered a final judgment in favor of Volftsun.

### B. Weinberger v. Tucker (ASCII II)

On July 1, 2004, Weinberger and ASCII (collectively "Weinber-

---

[3]Tucker testified that he never received the letter. (J.A. 376.)

ger" with respect to this action) filed a suit against Tucker for fraud, breach of fiduciary duty, and professional negligence. Tucker moved to dismiss, based on collateral estoppel. On September 29, 2005, the United States District Court for the District of Columbia transferred the case to the Eastern District of Virginia ("district court") and denied Tucker's motion without prejudice for mootness. Following the transfer, Tucker filed a renewed motion to dismiss, also based on collateral estoppel. Weinberger filed a response to the renewed motion to dismiss. The district court held a hearing on Tucker's motion, dismissed Weinberger's claim based on collateral estoppel, and entered a judgment for Tucker on November 9, 2006. Weinberger appeals to this Court.

## II.

As all parties are in agreement as to the proper standard, we review the district court's decision de novo.

Collateral estoppel, or issue preclusion, provides that once a court of competent jurisdiction actually and necessarily determines an issue, that determination remains conclusive in subsequent suits, based on a different cause of action but involving the same parties, or privies, to the previous litigation. *See Montana v. United States*, 440 U.S. 147, 153 (1979) (quoting *S. Pac. R. Co. v. United States*, 168 U.S. 1, 48-49 (1897)) ("[A] 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies. . . .'") (omissions in original)); *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979). Thus, "[t]he doctrine of collateral estoppel precludes relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate." *Virginia Hosp. Ass'n. v. Baliles*, 830 F.2d 1308, 1311 (4th Cir. 1987).

Both parties agree that, as this is a diversity jurisdiction case in a Virginia federal district court, Virginia collateral estoppel law applies. In Virginia, collateral estoppel requires: (1) the parties to the two proceedings, or their privies, be the same; (2) the factual issue sought to

be litigated must have been actually litigated in the prior action and must have been essential to the prior judgment; and (3) the prior action must have resulted in a valid, final judgment against the party sought to be precluded in the present action. *In re Ansari*, 113 F.3d 17, 19 (4th Cir. 1997) (quoting *TransDulles Ctr, Inc. v. Sharma*, 472 S.E.2d 274, 275 (Va. 1996)). Additionally, in Virginia, collateral estoppel requires a fourth element, mutuality. *Id.*

Weinberger maintains that he is not estopped from bringing his professional negligence, fraud, and breach of fiduciary duty claims, as Voftsun's failure to convert his debt into equity and the validity of the guarantee were the central issues in *ASCII I*. Tucker counters that the denial of the motion to disqualify and the upholding of the guarantee fundamentally resolve the disputes at issue in the case. We agree.

### A.

The first element of collateral estoppel requires that the parties, or their privies, be parties to the underlying case. Weinberger argues that the parties are not the same: in the first action Volftsun sued ASCII, TechNet, and ATH, and in this action, Weinberger and ASCII sued Tucker. Tucker responds that even though Tucker and Weinberger were not parties to the original proceedings, privity exists between Weinberger, as the founder and CEO of ASCII, and the company itself, as well as between Volftsun and Tucker, as his lawyer.

"Under both Fourth Circuit and Virginia decisions, the test for privity is [ ] the same: whether the interests of one party are so identified with the interests of another that representation by one party is representation of the other's legal right." *Londono-Rivera v. Virginia*, 155 F. Supp. 2d 551, 565 (E.D. Va. 2001) (citing *State Water Control Bd. v. Smithfield Foods, Inc.*, 542 S.E.2d 766, 769 n.4 (Va. 2001)). According to the Virginia Supreme Court in *State Water Control Board v. Smithfield Foods, Inc.*, 542 S.E.2d at 769 (citing *Nero v. Ferris*, 284 S.E.2d 828, 831 (Va. 1981); *Storm v. Nationwide Mut. Ins. Co.*, 97 S.E.2d 759, 762 (Va. 1957)),

> There is no single fixed definition of privity for purposes of res judicata. Whether privity exists is determined on a case by case examination of the relationship and interests of the

parties. The touchstone of privity for purposes of res judi-
cata is that a party's interest is so identical with another that
representation by one party is representation of the other's
legal right.

We now conduct an individualized examination of whether collateral
estoppel properly applies to each of the parties in the present action:
ASCII, Weinberger, and Tucker.

### 1.

As ASCII was a party in the underlying case and is also a party
here, collateral estoppel clearly can apply.

### 2.

Weinberger argues that his interests are distinct from ASCII's in
the underlying action. He maintains that he was personally repre-
sented by Tucker and is bringing the action not only on behalf of
ASCII but on behalf of himself in his individual capacity. Tucker
responds that the damages Weinberger alleges stem from his shared
economic identity with ASCII. He is correct.

As the chairman of both ASCII and the holding company and as
the owner of a majority of ASCII's stock, Weinberger is the real party
of interest when ASCII incurs damages. Weinberger's interests are so
in line with those of ASCII that representation by ASCII in the under-
lying action effectively represented Weinberger's legal rights in the
present case.[4] We, therefore, hold that there is privity between Wein-
berger and ASCII.

---

[4]Had Weinberger brought a legal malpractice action against Tucker
based on issues stemming from Tucker's conduct in handling Weinber-
ger's estate or tax planning, ASCII would not have adequately repre-
sented Weinberger's interests in the previous action. At oral argument,
however, Weinberger conceded that all the claims in the present action
flow from Tucker's actions surrounding the guarantee.

### 3.

According to Weinberger, Tucker is not in privity with Volftsun. Weinberger argues that the attorney-client relationship is not sufficient to establish privity. Furthermore, Weinberger points out that Tucker did not represent Volftsun in *ASCII I* and that Tucker never testified or presented any evidence that he had a personal stake in the *ASCII I* litigation. Tucker responds that he and Volftsun shared identical interests with respect to the motion to disqualify Venable and the validity of the guarantee. Tucker argues that he had a particularly strong interest, as the enforcement of the guarantee rested on his conduct and he faced the possibility of a legal malpractice suit by Volftsun had the defendants in *ASCII I* succeeded in their defenses that the guarantee had expired or that the guarantee was fraudulently induced. We again agree with Tucker.

The concept of privity requires an alignment of interests and not an exact identity of parties. In *Nash County Board of Education v. Biltmore Co.*, 640 F.2d 484, 494 (4th Cir. 1981), this Court applied the definition of privity employed by Judge Goodrich in his concurrence in *Bruszewski v. United States*, 181 F.2d 419, 423 (3d Cir. 1950):

> "Privity states no reason for including or excluding one from the estoppel of a judgment. It is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata."

Thus, privity centers on the closeness of the relationship in question. Courts have held that the attorney-client relationship itself establishes privity. *See, e.g.*, *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1169 (10th Cir. 2000) (citing *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235 n.6 (7th Cir. 1986)) ("The law firm defendants appear by virtue of their activities as representatives of Green and AT&T, also creating privity."); *Henry*, 808 F.2d at 1235 n.6 ("Even though the Bank was the only actual party to the state court mortgage foreclosure proceedings, the other defendants, as directors, officers, employees, and attorneys of the Bank, are in privity with the Bank for purposes of res judicata."); *Verhagen v. Arroyo*, 552 So. 2d 1162 (Fla. 3d DCA 1989) (holding that under Florida law for the purposes of collateral estoppel,

an attorney is in privity with his or her client in a previous suit when the opposing party in that action brings a subsequent suit against the attorney based in the same facts); *see also* 47 Am. Jur. 2d, Judgments § 617. *But see Cont'l Sav. Ass'n v. Collins*, 814 S.W.2d 829 (Tex. App. Houston [14th Dist.] 1991) (holding that under Texas law the mere representation of a party in a lawsuit does not establish privity between an attorney and his or her client). We do not hold, however, that privity exists with respect to every attorney-client interaction. Rather, we conclude here that because Tucker's interests were so identified with Volftsun's, Volftsun effectively represented Tucker's legal rights in *ASCII I*.[5] Tucker, as Volftsun's attorney during the loan negotiation, had an undeniable interest in the motion to disqualify, as well as in the enforcement of the guarantee. Tucker's professional conduct, in fact, was validated by the court's honoring the waiver and enforcing the guarantee. Accordingly, we hold that Volftsun and Tucker were privies.

### B.

For collateral estoppel to apply, the factual issues in the subsequent case must have been essential to and actually litigated in the underlying case.

### 1.

In this case, Weinberger sued Tucker for professional negligence, breach of fiduciary duty, and fraud. Weinberger explains that while the enforcement of the guarantee was at issue in the first litigation, this action deals specifically with Tucker's misconduct. Tucker argues that the judge's findings in *ASCII I* negate the elements of Weinberger's claims against Tucker.

The district court in *ASCII I* resolved issues essential to the present case. For example, in honoring the waiver letter and denying the motion to disqualify Venable, the court rejected ASCII's, and therefore Weinberger's, argument that Venable was simultaneously repre-

---

[5]Again, had Weinberger alleged claims not flowing from the guarantee, Tucker and Volftsun would not have been privies with respect to those claims, as Volftsun could not have represented Tucker's interest.

senting ASCII, Weinberger, and Volftsun. In so doing, the district court found that, as of the waiver letter, ASCII, and thus ASCII's privy Weinberger, enjoyed no attorney-client relationship with Tucker or other Venable lawyers with respect to the guarantee. If Tucker was not Weinberger's lawyer, Weinberger could not sue Tucker for legal malpractice or breach of fiduciary duty, as Tucker's only professional obligations laid with Volftsun. Similarly, the district court's rejection of ASCII's fraudulent inducement argument and upholding of the guarantee's validity undermine Weinberger's fraud claim. Because the central disputes of this case flow from the waiver agreement and Tucker's conduct with regard to the validity of the guarantee, we hold that the issues resolved in *ASCII I* are essential to Weinberger's current claims.

2.

Weinberger asserts that the denial of the motion to disqualify did not constitute a full and fair review. Tucker, however, contends that the issue is not precluded merely based on the motion to disqualify, but also on the finding on the merits that the guarantee was enforceable and was not fraudulently induced, the finding that the parties were separately represented with respect to the guarantee, and the finding that the guarantee was negotiated at arm's length.

In *TransDulles*, 472 S.E.2d at 276, the Virginia Supreme Court rejected the proposition that for an issue to be "actually litigated" the opposing party must personally appear at a hearing and contest the matter. Thus, Virginia law does not require a hearing for an issue to be considered actually litigated. In the first action, ASCII raised the possible conflict of interest issue in its motion to disqualify. Thus, through ASCII, Weinberger had the opportunity to present evidence in accordance with that motion. The court in *ASCII I* assessed the information presented and made the determination that Weinberger had waived Tucker's and Venable's representation of ASCII with respect to the guarantee. Furthermore, in the underlying action, ASCII raised the affirmative defense of fraudulent inducement. Consequently, in deciding to uphold the guarantee, the district court considered whether it had been fraudulently induced. We, therefore, hold that the issues in this action were actually litigated in *ASCII I*.

C.

Additionally, the prior judgment must have been final and valid. Weinberger maintains that the ruling on the motion to disqualify is not a final judgment subject to appeal because ASCII appealed in July 2003 and, due to a lack of funds, entered settlement negotiations with Volftsun in August 2003. This argument is not compelling. According to the Virginia Supreme Court, "a judgment is not final for the purposes of *res judicata* or collateral estoppel when it is being appealed or when the time limits fixed for perfecting the appeal have not expired." *Faison v. Hudson*, 417 S.E.2d 302, 305 (Va. 1992). Although Weinberger executed a settlement agreement while the appeal was pending, the appeal was no longer pending after a settlement agreement was reached and the time for appealing has long since expired. *ASCII I* is a final, valid judgment.

D.

Under the principle of mutuality, a litigant may not invoke a preclusive judgment if he would not have been bound by the opposite result. *Rawlings v. Lopez*, 591 S.E.2d 691, 692 (Va. 2004) (citing *Norfolk & Western Ry. v. Bailey Lumber Co.*, 272 S.E.2d 217, 218 (Va. 1980)). Weinberger argues that Tucker would not have been bound by the decision on the motion for disqualification. Tucker argues that mutuality exists because the granting of the motion to disqualify or a finding that the guarantee was not enforceable would have bound Tucker.

In *Angstadt v. Atlantic Mutual Insurance Co.*, 457 S.E.2d 86 (Va. 1995), an injured party sued, claiming that the insured's negligence caused his injury, and a default judgment was entered. When the insurer learned of the default judgment, it disclaimed coverage and sued for a declaratory judgment to be relieved from any obligation to pay in the underlying tort case. The Virginia Supreme Court reversed and remanded the grant of summary judgment in favor of the insured. Among the reasons the court held that collateral estoppel did not apply was a lack of mutuality, as the insurer was not a party to the original action. *Angstadt*, 457 S.E.2d at 88 (citing *Selected Risks Ins. Co. v. Dean*, 355 S.E.2d 579 (Va. 1987); *Bailey*, 272 S.E.2d at 217). However, mutuality does not require the same parties but rather "that

to be effective the estoppel of the judgment must be mutual." *Bailey*, 272 S.E.2d at 218. The insurer was not bound by a judgment against the insured and, therefore, could not prevail on its claim of collateral estoppel. Yet unlike in the insurer-insured relationship, the Virginia Supreme Court has held that mutuality can exist between attorneys and their clients, when the attorney was not a party to the previous action. In *Hozie v. Preston*, 493 F. Supp. 42 (W.D. Va. 1980), the Hozies sued their lawyer, Preston, after he had entered into a settlement agreement with Hart on their behalf. When the Hozies refused to honor the agreement, Hart sued in a Virginia court, asking that the court enforce the settlement. The singular issue in that lawsuit was whether Preston had the authority to enter into the agreement on the Hozies' behalf. The jury found that he did. Subsequently, the Hozies sued Preston, alleging that he failed to adequately represent them. The district court granted summary judgment, finding that the mutuality requirement did not prevent collateral estoppel from barring the Hozies' second lawsuit. Similarly, we hold that mutuality does not bar Tucker from estopping Weinberger's lawsuit, because if ASCII had prevailed on the motion to disqualify Venable or in its fraudulent inducement affirmative defense, Tucker would have been bound by the ruling with respect to liability in a subsequent legal malpractice action.

### III.

Weinberger cannot prevail on his claims without directly contradicting the court's findings in *ASCII I*. We hold that Virginia's doctrine of collateral estoppel bars any attempt by Weinberger to repackage the claims rejected in the underlying case as claims against Tucker. Accordingly, we affirm the district court's dismissal.[6]

*AFFIRMED*

---

[6]On May 21, 2007, Tucker filed a motion for leave to file a surreply with a proposed surreply. Weinberger opposed. We deferred consideration until oral argument. We now grant Tucker's motion and accept his surreply.