**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 12-1928**

———————

UNIVERSAL FURNITURE INTERNATIONAL, INC.,

        Plaintiff - Appellee,

    v.

PAUL FRANKEL,

        Defendant - Appellant,

    and

LEONARD FRANKEL,

        Defendant.

———————

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. William L. Osteen, Jr., District Judge. (1:08-cv-00395-WO-JEP)

———————

Argued: May 15, 2013          Decided: August 20, 2013

———————

Before Sandra Day O'CONNOR, Associate Justice (Retired), Supreme Court of the United States, sitting by designation, and FLOYD and THACKER, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

John F. Bloss, HIGGINS BENJAMIN PLLC, Greensboro, North Carolina, for Appellant. W. Swain Wood, WOOD JACKSON PLLC, Raleigh, North Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In Universal Furniture International, Inc. v. Collezione Europa USA, Inc., 618 F.3d 417 (4th Cir. 2010), this Court affirmed a judgment in favor of Universal Furniture, making Collezione liable for $11 million in damages for various infringements on Universal's intellectual property. But Collezione's bankruptcy kept it from satisfying that judgment, and so Universal decided to pursue individual liability against defendant Paul Frankel and his brother Leonard -- Collezione's principal owners and managers. Leonard defaulted, but Paul contested his liability. The district court granted summary judgment to Universal largely by giving preclusive effect to issues resolved in the first lawsuit. Paul appeals, asserting that this preclusion holding was erroneous and that he had viable individual defenses to liability. We disagree and affirm.

I.

Because the facts of the underlying dispute are fully developed in previous opinions and mostly irrelevant to this appeal, we offer only an abbreviated discussion.

Collezione was admittedly in the "knock-off" furniture business -- in general, it made money by producing approximate versions of others' designs at a lower price. It ran into trouble when it did so with certain copyrighted designs

belonging to Universal, and its problems were compounded by its display of actual Universal furniture as its own during a major furniture show called the High Point Market. After Universal sent a cease-and-desist letter, Collezione agreed to redesign the relevant furniture collections. But it again produced a design rather close to Universal's and then used it to pursue customers who were originally induced to deal with Collezione through its previous actions. Universal sued, and prevailed. This Court's opinion in the first lawsuit resolved that Universal had valid and enforceable copyrights, that Collezione infringed them, that Collezione also violated federal and state unfair trade laws by passing off Universal's product as its own, and that it owed some $11 million in damages. See Universal Furniture, 618 F.3d at 424-27.

Collezione was owned and managed almost entirely by defendant Paul Frankel and his brother, Leonard. The brothers founded Collezione together and were its only corporate officers. Leonard was the President, but Paul was Vice President, Secretary, and Treasurer, and had responsibility for the financial aspects of the business, as well as certain distribution matters. In the first trial, Paul testified that he was aware of the cease-and-desist letter and told his brother that it would be a good idea to redesign the furniture. He also testified that he was present at the High Point Market when a

4

photographer took pictures of the apparently-Collezione-but-actually-Universal furniture, and that he received those pictures and distributed them to salespeople (although he maintains that he was not aware of any intellectual property violations). Finally, Paul was involved in the decision to hold orders during the redesign of the furniture to give customers a chance to purchase the new design, and personally contacted at least one of those potential buyers. He had responsibility for the flow of Collezione product, and as a co-owner of the business, he was generally familiar with its operations. See Universal Furniture Int'l, Inc. v. Frankel, 835 F. Supp. 2d 35, 45-48 (M.D.N.C. 2011).

Finally, although he maintains that Leonard "controlled" the first round of litigation, Paul clearly played a considerable role in that suit. Paul gave substantial deposition testimony as Collezione's Rule 30(b)(6) witness, was the sole in-court representative for Collezione, and was the only Collezione employee to submit any sworn statements on its behalf. Paul and Leonard owned equal shares in the company, and so held an equally serious stake in the outcome of that case. Id. at 41-42.

In this case, Universal pursued individual liability against Paul for his role in Collezione's infringing activities. The district court granted summary judgment to Universal, making

5

two sets of determinations that Paul challenges here. First, the district court determined that Paul could be collaterally estopped from re-litigating important matters resolved during the first trial (such as the validity of Universal's copyrights, and Collezione's infringement thereof). The district court held that, given Paul's substantial role in the first suit and the absence of any evidence that he would have conducted himself differently had personal liability been at stake, Paul had a "full and fair opportunity" to litigate the relevant issues, making collateral estoppel appropriate. Second, the district court held that there were no genuine issues of material fact surrounding Paul's individual liability. The court found that, on the admitted facts, Paul's role in the distribution of infringing furniture was sufficient to find either direct or vicarious liability for infringement, and that Paul either did know, should have known, or willfully blinded himself to the passing off of Universal furniture that occurred at the High Point Market. Paul challenges both these holdings, and we discuss each in turn.

## II.

Paul first argues that the district court erred in applying collateral estoppel to the issues resolved in the first litigation. The grant of summary judgment on a collateral

6

estoppel issue is reviewed de novo.  See Henson v. Liggett Grp., Inc., 61 F.3d 270, 274 (4th Cir. 1995).

The form of issue preclusion applied in this case is sometimes called "offensive, non-mutual, collateral estoppel": "offensive," because it is being invoked by a plaintiff to foreclose a defense to liability; "non-mutual," because at least one of the parties did not participate in the first litigation; and "collateral estoppel," because it estops the defendant from arguing again about what was resolved in an earlier, separate case.  The Supreme Court has counseled that this form of preclusion is somewhat disfavored because it creates the potential for gamesmanship by plaintiffs and unfairness to defendants.  See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329-31 (1979); In re Microsoft Corp. Antitrust Litig., 355 F.3d 322, 326-27 (4th Cir. 2004).  But for the reasons that follow, we find the tests for its application satisfied and the allegations of unfairness wanting.

This Court's previous cases have identified various factors that trial courts must consider before applying collateral estoppel -- factors bearing on the extent to which the relevant issues were conclusively resolved and the extent to which the party suffering estoppel had a chance to defend itself on these issues in the original litigation.  See In re Microsoft Corp., 355 F.3d at 326; Polk v. Montgomery Cnty., 782 F.2d 1196, 1201

7

(4th Cir. 1986). Paul's challenge addresses only two of these factors: (1) whether he was "in privity" with Collezione, the defendant in the first action; and (2) whether he had "a full and fair opportunity" to litigate in that case. The district court correctly resolved these related issues.

Two parties can be said to be in privity when "the interests of one party are so identified with the interests of another that representation by one party is representation of the other's legal right." Weinberger v. Tucker, 510 F.3d 486, 491 (4th Cir. 2007) (citation omitted). It does not require "an exact identity of parties," id. at 492; a party with closely aligned interests who controls the litigation of another can be considered in privity with the party it controls. See Martin v. Am. Bancorporation Ret. Plan, 407 F.3d 643, 651 (4th Cir. 2005). The district court correctly identified this relationship between Paul Frankel and Collezione -- the closely held company he owned and controlled equally with his brother. The uncontested evidence showed that, as co-owner and manager, Paul had every incentive to make Collezione contest the copyright validity and infringement issues resolved in the first case, and his substantial role in that case indicates that he had a full and fair opportunity to do so.

Paul asserts that, given Collezione's impending bankruptcy, he did not have a full incentive to contest the first case. But

8

he has not pointed to any argument or evidence that he would have offered had he appeared in the first litigation as an individual defendant, let alone suggested any material effect that such evidence could have had on the issues that case resolved. The same is true of his allegation that his brother Leonard "controlled" the first litigation: Even in this Court, he has not explained how his interests could have departed at all from his brother's or their company's; he has not indicated why he lacked the ability to contest his brother's alleged decisions given his equal ownership; he has not identified a decision that he would have contested; and he has not offered any evidence of how such a decision could have affected the outcome of the case. Accordingly, we can find no fault in the district court's holding that Paul came forward with "no evidence to suggest that [he] would have conducted himself any differently . . . had he been a named party in [the] prior action." Universal Furniture, 835 F. Supp. 2d at 43.

Paul also suggests that collateral estoppel should be per se unavailable because Universal failed to join him in the first action when it could have. To be sure, the district court found that there was "no reason why [Universal] could not have easily joined [Paul] as an individual party to the Collezione Litigation," id. at 42, and this Court has said that offensive non-mutual collateral estoppel may be inappropriate where a

9

plaintiff seeking to use it could have joined issue with the current defendant in the previous litigation, see, e.g., Polk, 782 F.2d at 1202. Accordingly, Paul argues that it would be unfair to him to allow Universal to leave him out of the first litigation, only to use that litigation against him later.

Paul takes this doctrine out of context however, and so fails to identify the unfairness it means to address. The Supreme Court has noted that offensive non-mutual collateral estoppel can be unfair when it encourages plaintiffs to adopt a "wait and see" attitude towards litigation. In particular, a plaintiff who is not a party to a particular litigation might have an incentive to sit on the sidelines and see if the first plaintiff prevails: if so, she can use non-mutual collateral estoppel to free-ride on the victory; if not, she can use non-mutuality to get a second bite at the apple by litigating herself. See Parklane Hosiery Co., 439 U.S. at 329-30. Thus, plaintiffs who opt not to join a case must be precluded from making offensive use of its results to prevent gamesmanship, as the rule in Polk provides. But the problem for Paul is that Universal was a party to the first litigation, and would unquestionably have been bound to its result, win or lose. In other words, had Collezione prevailed in the first litigation, Universal's party status would prevent it from re-litigating that case with Paul as a new defendant. Given the district

10

court's correct determination about the alignment of interests between Paul and Collezione, there is no reason this result should not run both ways. Indeed, given the finding that Collezione and Paul were in privity, the estoppel in this case is only garden-variety, mutual estoppel between the plaintiff in the first action (Universal) and the defendant in that action or its privy (Collezione/Paul). Accordingly, we find that the application of collateral estoppel was correct, and the district court properly gave preclusive effect to those issues definitively resolved in the prior litigation.

## III.

We next address Paul's arguments regarding his personal defenses to liability. We again review the district court's grant of summary judgment on these issues de novo, and again agree with its determination.

## A.

First, we agree with the district court that the uncontested evidence established at least vicarious liability for copyright infringement. It is copyright infringement not only to copy another's design, but to authorize <u>distribution</u> of such copies to the public for sale. <u>See</u> 17 U.S.C. § 106(3). And a party may be guilty of vicarious infringement if it: "(1) possessed the right and ability to supervise the infringing activity; and (2) possessed an obvious and direct financial

11

interest in the exploited copyrighted materials." Nelson-Salabes, Inc. v. Morningside Dev., LLC, 284 F.3d 505, 513 (4th Cir. 2002). By his own admission, Paul was involved in: the "operations and financial side of the business," including transactions with the Collezione warehouse; "order fulfillment;" "purchasing and flow of product;" "general operation of the sales [department];" and "supervision of . . . [the] distribution center." J.A. 38, 59. Given his status as a co-owner, and his expression of his opinion that the furniture should be redesigned, we can easily agree with the district court's finding that Paul had both the ability to supervise infringing distribution and an obvious financial interest in the exploitation of the copyrighted furniture. He had every incentive to see that his company successfully marketed its knock-off furniture, and to ensure that it did so without committing copyright infringement. His failure to prevent infringing distribution thus leaves him at least vicariously liable for that infringement.

### B.

Finally, we also agree with the district court's holding regarding Paul's personal liability for Collezione's "reverse passing off" of Universal's furniture under both federal and state law. Paul was admittedly present in the showroom when this passing off occurred and when the furniture was

photographed, and he admittedly distributed those photographs to Collezione's salespeople. Even after he became aware of Universal's allegations in its cease-and-desist letter, he was involved in the distribution of furniture to customers initially induced to deal with Collezione through its false designation of Universal's furniture as its own. He also profited directly from those sales and failed as a co-owner to do anything to prevent them, even after becoming aware of a significant risk of continued infringement through Universal's communications. Accordingly, we can locate no error in the district court's finding that Paul either knew or should have known of Collezione's infringement, or was at least willfully blind to its misdoings.

## IV.

At bottom, it is clear that Paul's strategy in this action was to pin both the conduct of Collezione's first trial and its entire operation as a knock-off furniture business on his absent brother Leonard. But we agree with the district court that Paul's evident involvement in the first trial and his own testimony regarding his role in the business make that strategy untenable. We therefore agree with the application of collateral estoppel and the grant of summary judgment on Paul's asserted personal defenses, and affirm the judgment below.

AFFIRMED

13