**AFFIRM; and Opinion Filed November 6, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01575-CV

**WILLIAM T. DICKSON, Appellant**
**V.**
**BNSF RAILWAY COMPANY AND FELLERS SNIDER BLAKENSHIP BAILEY & TIPPENS, P.C., Appellees**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC 12-02048**

## MEMORANDUM OPINION
Before Justices Lang-Miers, Brown, and Schenck
Opinion by Justice Schenck

Williams T. Dickson appeals the summary judgments granted in favor of appellees Fellers Snider Blankenship Bailey & Tippens, P.C. and BNSF Railway Company. We affirm the trial court's judgment. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### BACKGROUND FACTS

Dickson was retained by B. Willis, C.P.A., Inc. ("Willis") to represent it in numerous proceedings before state and federal courts related to the condemnation of an easement on Willis's property. Dickson agreed to represent Willis on a contingency-fee basis with the total attorney's fee to be one third of all sums recovered. This case arises from Dickson's claim of entitlement to compensation under that fee agreement. In particular, he claims that his client and

his former adversary entered into a settlement with the purpose of evading his right to those fees. Because the claim centers on the earlier litigation, we begin our discussion with a summary of his earlier litigation.

### *State court condemnation proceedings*

More than twenty years ago, the Public Service Company of Oklahoma ("PSO") sought to build a rail line that ran across Willis's property. When Willis refused to grant the PSO an easement, the PSO filed a petition in Oklahoma state court to condemn the easement. The state court appointed a three-member commission to determine the amount of compensation the PSO should pay Willis for the easement. The commissioners inspected Willis's property, assessed compensation for the injury in the amount of $49,920, and filed a report with the county clerk and the parties. Willis appealed, objecting to the amount of compensation and challenging the validity of the condemnation itself. In 1995, while Willis's condemnation appeal was pending, pursuant to Oklahoma law, the PSO took possession of the easement, built a railroad track and bridge across approximately 1,069 feet of Willis's property, and entered into an agreement with BNSF Railway Company ("BNSF"), under which BNSF operates a rail line across Willis's property.

For more than a decade, Dickson, on behalf of Willis, challenged in multiple proceedings and appeals the right of the PSO and BNSF to immediate possession of the easement pending appeal, the procedural accuracy of the taking, and the amount awarded as compensation for the taking. While he obtained temporary victory on a procedural point concerning the right to obtain the easement, he ultimately obtained no relief as to the taking or the amount awarded as compensation for the taking and remained enjoined from interfering with the PSO's and BNSF's right to possession since 1995.

*Federal court actions challenging the state court rulings*

Early in the course of Willis's appellate challenges in the Oklahoma state court system, Dickson, on behalf of Willis, initiated two actions in the federal district court for the Northern District of Oklahoma, collaterally challenging the state court's rulings in the condemnation and the immediate-possession cases. In the first federal action, Willis, despite the state court injunction, asserted under federal and state law that it was entitled to a final judicial determination on condemnation before the PSO could take possession of the easement over Willis's property. When the district court denied its claims, Willis appealed to the Tenth Circuit Court of Appeals. That court rejected Willis's facial constitutional challenge to the Oklahoma condemnation scheme, as well as Willis's claim that the state district court's temporary injunction violated Willis's First Amendment rights. Additionally, the Tenth Circuit dismissed two of Willis's other claims without prejudice, concluding they were not ripe for adjudication until the state condemnation proceedings concluded. Those two claims were Willis's claims against BNSF for trespass and its constitutional claims alleging the Oklahoma eminent-domain proceedings denied Willis just compensation, due process, and equal protection of the law.

In the second federal action, Dickson, on behalf of Willis, asserted the state trial judge and the PSO had violated Willis's First Amendment right to free speech when the court held Willis in contempt for violating the temporary injunction. The district court rejected Willis's claim on the merits, and the Tenth Circuit affirmed.

*Petition to the federal Surface Transportation Board*

In 2001, Willis (again through Dickson) opened another front, filing a petition with the federal Surface Transportation Board, in which it sought a declaration that the rail line the PSO had already constructed across Willis's property was subject to the STB's exclusive jurisdiction. However, the STB determined the rail line was a private rail line over which the STB did not

have jurisdiction and denied Willis's petition. The District of Columbia Circuit affirmed the STB's determination, and the United States Supreme Court denied Willis's petition for a writ of certiorari.

### *Willis files additional state actions and pursues the remanded federal actions*

Undeterred by the setbacks, Dickson, on behalf of Willis, commenced two further cases in 2004, suing BNSF in Oklahoma state court and separately in federal court, adding Union Pacific Railway and the PSO.[1] Following BNSF's removal of the state court filing, the two cases were consolidated. In the consolidated 2004 case, the federal district court dismissed all of Willis's claims, concluding that they would not be ripe for adjudication as long as the state court condemnation proceedings remained pending or were precluded by the effect of earlier decisions. Willis, through Dickson, appealed those decisions to the Tenth Circuit.

On appeal, the Tenth Circuit concluded that the final determinations Oklahoma courts had made in the condemnation and the immediate-possession cases precluded Willis from pursuing all of the state and federal claims asserted at the district court with two limited exceptions. Those two exceptions were (1) Willis's state law trespass claim, to the extent it alleged the PSO wrongfully removed coal and limestone from beneath the surface easement and (2) Willis's due-process and equal-protection claims asserted against the PSO, to the extent those claims were based upon allegations other than that the PSO wrongfully possessed and used the easement across Willis's property during the course of the condemnation case proceedings. The Tenth Circuit nevertheless determined those two remaining claims were not yet ripe for adjudication and remanded to the district court with instructions to dismiss them without prejudice.

---

[1] In the 2004 case filed in state court, Willis asserted state law tort and contract claims based on Willis's belief BNSF was wrongfully possessing the easement. In the federal case, Willis asserted claims under the Interstate Commission Termination Act, 42 U.S.C. § 1983, and state tort and property laws that the defendants' immediate possession and continued use of the easement across Willis's property was wrongful.

During the above federal court proceedings, Willis's state court proceedings in the condemnation and the immediate-possession cases continued. Before the Tenth Circuit issued its opinion on the consolidated 2004 case, the Oklahoma Supreme Court denied Willis's petition for a writ of certiorari, as did the United States Supreme Court. The state courts finally determined the PSO established a public necessity justifying its condemnation of an easement across Willis's property, and that the PSO's and BNSF's possession of the easement during the state court condemnation proceedings was lawful in 2007. In 2008, the condemnation case court then held a jury trial on the issue of Willis's compensation. The jury awarded Willis an amount lower than that previously awarded by the three-member commission that had been set aside as a result of the first state appeal. Willis appealed the jury award ("state jury award appeal").

After the Tenth Circuit's decision in the consolidated 2004 case, Willis dismissed the state jury award appeal and returned to the Northern District of Oklahoma for determination of the two claims the Tenth Circuit remanded from the consolidated 2004 case ("2010 Northern District decision"). The federal district court dismissed BNSF as a party to the action because the Tenth Circuit specified that the only remaining claims were those Willis brought against the PSO. Thereafter, the district court granted summary judgment in favor of the PSO, finding that the now final state condemnation proceedings precluded Willis's claims against the PSO.

### *The road to settlement*

In August 2010, Willis, through Dickson, appealed the 2010 Northern District decision on remand to the Tenth Circuit. While the appeal was pending, the PSO filed a motion in the district court for $312,000 in attorney's fees from Willis and Dickson. Bucky Willis, president of Willis, became concerned about the extent of his business's exposure to liability for these fees. Dickson assured him there was no basis for any award of attorney's fees. The PSO's attorneys made a proposal offering to drop the motion for attorney's fees if Willis would

abandon its appeal. Although the proposal stated the PSO had not yet agreed to the terms, its attorneys indicated they believed the PSO would accept the terms. Dickson did not inform his client of the proposal, and instead Bucky Willis learned of it by seeing the faxed proposal in his shared office space with Dickson. Bucky Willis directed Dickson to accept the proposal. Dickson refused, sent a letter to the PSO's counsel rejecting the proposal, and filed a notice of attorney's lien in the Northern District of Oklahoma.

Bucky Willis then approached Steve Adams with Fellers Snider Blankenship Bailey & Tippens, P.C. ("Fellers Snider"), a law firm that had previously represented his company, for a second opinion concerning potential liability for attorney's fees. When Dickson learned of this communication, he threatened to sue Fellers Snider. Bucky Willis continued to express to Dickson that he wished to discontinue the appeal of the 2010 Northern District decision, and in November 2010, Dickson filed motions with the Tenth Circuit seeking leave to withdraw as counsel for Willis. The Tenth Circuit granted the motions and advised Willis the appeal would be dismissed for want of prosecution unless the entity secured another attorney by December 15, 2010. When Willis did not obtain substitute counsel, the appeal was dismissed.

Shortly after the dismissal, on February 17, 2011, the federal district court held a hearing to discuss the PSO's pending motion for attorney's fees and a motion to approve the settlement the PSO sought to reach with Willis.[2] Because Willis had not obtained substitute counsel, the court ordered Dickson (as last counsel of record) to appear on behalf of Willis. At the hearing, Bucky Willis testified on behalf of his company about his intent to reach a settlement agreement with the PSO and BNSF in exchange for the PSO and BNSF forfeiting their rights to seek attorney's fees against Willis. At that same hearing, Dickson indicated his disapproval of the

---

[2] Dickson maintains the settlement had already been reached by this point, but excerpts from the February 17, 2011, hearing include statements from the PSO's counsel that they hoped to reach a settlement at the hearing.

settlement and his intention to pursue Willis for fees. The district court judge recommended to Willis that he obtain substitute counsel to review the proposed settlement agreement. On February 28, 2011, substitute counsel for Willis entered his appearance for the purpose of "accomplishing a settlement and filing a stipulation of dismissal all pursuant to the [c]ourt's rulings made [on] February 17, 2011." The parties filed a joint stipulation of dismissal with prejudice on March 23, 2011.

### Sanctions against Dickson

The PSO continued with its motion for attorney's fees against Dickson alone and was awarded $152,281.57 in attorney's fees and $1,324.84 in expenses as sanctions. In a report and recommendation on the issues, the assigned magistrate judge described Dickson's litigation strategy as "wast[ing] the time and resources of many different tribunals and of all the parties," focusing his frustration at Dickson's reasserting arguments foreclosed by the res judicata effect of the adverse state court judgments. Dickson appealed the sanctions award, and the Tenth Circuit affirmed the award, concluding that Dickson's conduct was objectively unreasonable. Dickson sought review by certiorari from the U.S. Supreme Court, which denied his petition.

### Dickson's Texas suit

In February 2012, Dickson filed a suit in Texas state court against the PSO, BNSF, Fellers Snider, and American Electric Power, Inc., the corporate parent of the PSO, alleging the defendants settled the case without Dickson's knowledge or consent in violation of his perfected attorney's lien. Dickson alleged the defendants violated several Oklahoma statutes, committed tortious interference with his contingency-fee contract, interfered with his prospective economic advantage, and committed statutory and common-law fraud. The trial court granted AEP and the PSO summary judgment on December 20, 2013, and in a final order dated April 29, 2014, severed that action from Dickson's remaining claims against BNSF and Fellers Snider. Our

opinion disposing of Dickson's appeal of the summary judgment granted in favor of AEP and the PSO is located at *Dickson v. Am. Elec. Power, Inc.*, No. 05-14-00690-CV. Subsequently, the trial court granted traditional and no-evidence summary judgments in favor of Fellers Snider and BNSF on September 17, 2014.

On appeal, Dickson asserts avers trial court erred by (1) denying his request for a continuance before ruling on the motions for summary judgment; (2) granting objections to his evidence and in striking portions of his response; and (3) granting summary judgment. We first address Dickson's third issue regarding the trial court's grant of summary judgment in favor of BNSF and Fellers Snider.

## SUMMARY JUDGMENT

In his third issue, Dickson raises various arguments concerning his assertion that the trial court erred by granting summary judgment in favor of BNSF and Fellers Snider. The judgments in question disposed of all of Dickson's claims including: (1) tortious interference with a contract; (2) interference with prospective economic advantage; (3) fraud under OKLA. STAT. ANN. tit. 76, § 2 (West, Westlaw through 2015 portion of 2015–2016 Legis. Sess.) and common-law fraud; and (4) punitive damages under OKLA. STAT. ANN. tit. 23, § 9.1. Dickson also asserted a claim against BNSF (but not Fellers Snider) for settlement in breach of OKLA. STAT. ANN. tit. 5, § 8.

### A.    Standard of Review

When, as here, an appellate court reviews both no-evidence and traditional summary-judgment motions, we first review the trial court's summary judgment under the standards of review for no-evidence summary judgments, potentially pretermitting the need for further analysis. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). No-evidence summary judgments are reviewed under the same legal sufficiency standard as directed verdicts.

*Id.* Under that standard, evidence is considered in the light most favorable to the non-movant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *Id.* A no-evidence challenge will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Id.*

### B.    Discussion

In their motions, BNSF and Fellers Snider asserted that Dickson's claims for settlement in breach of OKLA. STAT. ANN. tit. 5, § 8, tortious interference with a contract, interference with prospective economic advantage, and fraud failed for lack of evidence of damages or injury. BSNF reasons that because Willis lost on all its claims against BNSF, it is not possible for Willis to recover any sums from which Dickson would be owed a contingency fee. Dickson alleges that genuine factual disputes on the following issues preclude summary judgment (1) whether Fellers Snider represented Willis in negotiating the settlement agreement between Willis, PSO, and BNSF; (2) whether Dickson voluntarily withdrew as Willis's attorney; and (3) when the settlement between Willis, PSO, and BNSF was reached. For the following reasons, we conclude these fact issues do not preclude summary judgment.

Each of the claims asserted by Dickson against appellees requires evidence of damages.[3] The Oklahoma statute Dickson asserts BNSF breached when it settled with Willis provides that when an adverse party settles or compromises an action with another party but fails to obtain the consent of that party's attorney who has perfected a lien, the adverse party "shall thereupon

---

[3] For claims other than those Dickson pursued under Oklahoma statute, we look to Texas law because the parties have not pointed to any material difference between Oklahoma law and Texas law, and thus we presume they are the same. *Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 685 (Tex. 2006).

become liable to such attorney for the fee that was due or *would have become due under a contract of employment but for the settlement*." OKLA. STAT. ANN. tit. 5, § 8 (emphasis added).[4] Claims for common-law fraud, tortious interference with an existing contract, and interference with prospective economic advantage also require a showing of damages. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348S.W.3d 194, 217 (Tex. 2011) (elements of common-law fraud include that the plaintiff suffered an injury by actively and justifiably relying on that representation); *AmeriPath, Inc. v. Hebert*, 447 S.W.3d 319, 341 (Tex. App.—Dallas 2014, pet. denied) (elements of tortious interference with an existing contract include that the interference caused actual damages or loss); *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 565 (Tex. App.—Dallas 1989, no writ) (elements interference with prospective economic advantage include that actual harm or damage occurred as a result of the defendant's actions). Additionally, the Oklahoma fraud statute Dickson relies on provides that "[o]ne who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which *he thereby suffers*." OKLA. STAT. ANN. tit. 76, § 2 (emphasis added). Finally,

---

[4] Dickson argues that under Oklahoma law, he enjoys a "legal presumption that Willis was going to prevail" on his appeal of the district court's decision, relying on the following.

> Should the amount of the attorney's fees be agreed upon in the contract of employment, then such attorney's lien and cause of action against such adverse party shall be for the amount or portion of the property so agreed upon.
>
> If the fee be not fixed by contract the lien and cause of action, as aforesaid, shall be for a reasonable amount for not only the services actually rendered by such attorney, but for a sum, which it might be reasonably supposed, would have been earned by him, had he been permitted to complete his contract, and been successful in the action, *and such attorney in order to recover need not establish that his client, if the case has gone to trial, would have been successful in the action, but the fact of settlement shall be sufficient without other proof to establish that the party making the settlement was liable in the action.*
>
> Should the contract be for a contingent fee and specify the amount for which action is to be filed, then the lien and cause of action, as aforesaid shall be for the amount contracted for if fixed at a definite sum of money or for the percentage of the amount or property sued for as mentioned in said contract where the fee is fixed on a percentage basis, not exceeding thirty-three and one-third percent (33 ⅓ %) of the amount sued on where the settlement is before a verdict or judgment and if made after verdict or judgment then the full contract price.
>
> OKLA. STAT. ANN. tit. 5, § 9 (West, Westlaw through 2015 portion of 2015–2016 Legis. Sess.) (emphasis added).

The Oklahoma Supreme Court has examined that language and determined its meaning to be that proof of settlement by the adverse party without the consent of the attorney holding the lien establishes a prima facie case that the adverse party who made the settlement was liable in the action. *Orwig v. Emerick*, 231 P. 234, 235–37 (Okla. 1924). However, this prime facie case is subject to rebuttal proof, such that "[i]t then devolves upon the attorney to go forward and show the extent of the probable recovery in the original action to the end that the fee may be fixed in accordance with the percentage agreement." *Id.* Therefore, Dickson enjoys no such presumption and instead must establish the amount he would have recovered.

the Oklahoma Supreme Court requires actual damages as a prerequisite to an award of punitive damages. *McLaughlin v. Nat'l Benefit Life Ins. Co.*, 772 P.2d 383, 386 n.6 (Okla. 1988) ("In the absence of actual damages there can be no award of punitive damages.").

Under federal law, the preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as "res judicata." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Four requirements are necessary for res judicata to apply to a later litigation. *Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 701 (S.D.N.Y. 2014). The earlier decision must have been (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action. *Id.* Federal courts have also held that the preclusive effect given to a prior federal judgment is subject to federal law. *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1197 (10th Cir. 2000).

Dickson asserts his claims are not subject to preclusion because his claims in this case have never been litigated, asserted, or adjudicated by any court of competent jurisdiction. However, Dickson's claims rest on the argument that the appellees' actions in settling Willis's claims against the PSO and BNSF denied him the opportunity to collect a contingency fee from Willis under his contingency-fee agreement. Therefore, the only possible damages Dickson could collect would require that Willis could have recovered on a claim for which Dickson could have earned a contingency fee. Both BNSF and Fellers Snider respond that the claims from the 2010 Northern District decision that Willis sought to appeal to the Tenth Circuit had already been determined to be precluded by the federal district court. Dickson counters that the federal district court's judgment was not a final judgment for purposes of preclusion because an appeal was taken. We cannot agree with Dickson.

–11–

In *Deposit Bank of Frankfurt v. Board of Councilmen*, 191 U.S. 499, 514 (1903), the U.S. Supreme Court held that a final judgment of a federal trial court is conclusive, for purposes of res judicata, until that judgment is modified or reversed. Federal law is well settled that the pendency of an appeal has no effect on the finality or preclusive effect of a trial court's judgment. *Id.* Dickson attempts to reference the Tenth Circuit's opinion from the appeal of the consolidated 2004 case to support his argument that the 2010 Northern District decision was not a final order that would be preclusive between the parties. However, in that opinion, the Tenth Circuit was discussing the preclusive effect of state court judgments under Oklahoma state law. *See B. Willis, C.P.A., Inc. v. BNSF Ry. Corp.*, 531 F.3d 1282, 1300, 1301 n.24 (10th Cir. 2008). We conclude the federal district court's judgment was a final judgment and that a court of competent jurisdiction determined the same claims underlying Dickson's claims against appellees.

In turning to the remaining element of res judicata, privity, we note courts have held that under certain circumstances the attorney-client relationship itself establishes the necessary privity to bind the lawyer to the results in the client's case. *Weinberger v. Tucker*, 510 F.3d 486, 492–93 (4th Cir. 2007), *cert. denied* 554 U.S. 903 (2008) (collecting cases from federal and state courts). In fact, the Texas Supreme Court long ago held that an attorney who holds a contingent interest in the subject matter of litigation and who appears at and conducts trial of such litigation as attorney for such client, is bound by judgment entered against his client as effectively and completely as he would have been bound had he been named a party in such judgment. *Miller v. Dyess*, 151 S.W.2d 186, 190 (Tex. 1941). Dickson argues he had withdrawn as counsel for Willis before the settlement and thus could not be bound. However, Dickson represented Willis in the extensive litigation, maintaining a contingent interest in any sums Willis recovered, as detailed above up to and through the federal district court's decision that Willis's remaining

–12–

claims were precluded by decisions from state courts. Furthermore, his petitions allege that the PSO and BNSF "enter[ed] into a settlement agreement with Willis when Dickson was Willis' only attorney of record." Accordingly, we conclude there is no question Dickson was in privity with Willis.

We also note that to the extent Dickson relies on post-judgment proceedings in the Tenth Circuit to establish the merits of the underlying claims, the later decision of that court upholding sanctions against him on the grounds of his pursuit of them was groundless is undeniably directly binding on him, regardless of any notions of privity. *B. Willis, C.P.A., Inc. v. Pub. Serv. Co. of Okla.*, 511 Fed. Appx. 753, 757 (10th Cir. 2013) *cert. denied*, 134 S.Ct. 163 (2013) ("As the magistrate judge explained, 'it is [Mr.] Dickson's conduct in this case, including his failure to heed the Tenth Circuit's limitations on remand, which merits the Section 1927 sanctions.'"). We hold the decisions from the federal courts have a preclusive effect on any claims Willis asserted while represented by Dickson. We further hold that Willis failed to recover in state and federal courts and had no remaining claims that had not already been decided. Thus, there were no sums to be recovered on which Willis would owe Dickson a contingency fee. Accordingly, Dickson cannot establish damages for his claims. We overrule Dickson's third issue.

## MOTION FOR CONTINUANCE

In his first issue, Dickson contends the trial court erred in failing to grant his motion for continuance, which prevented him from completing two specific items of discovery he needed to effectively respond to the summary-judgment motions. Dickson requested the continuance in the body of his responses to the summary-judgment motions and attached his own affidavit to support the request.

When reviewing a trial court's order denying a motion for continuance, we consider whether the trial court committed a clear abuse of discretion on a case-by-case basis. *Joe v. Two*

–13–

*Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.* We consider the following nonexclusive factors when deciding whether a trial court abused its discretion in denying a motion for continuance seeking additional time to conduct discovery: the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *Id.*

Dickson admits that at the time of his motion, the case had been pending for more than two years. He argues that "the entire posture of the case changed" when in May 2014 the PSO first produced redacted copies of e-mails and Fellers Snider belatedly produced unredacted copies of those same e-mails. The e-mails in question, dated from August 2010 through January 2011, memorialize communications between the PSO's counsel and Steve Adams at Fellers Snider regarding settlement of Willis's claims and drafts of proposed settlements, as well as whether any of the lawyers were permitted communicate with Willis as a represented non-client. However, since the beginning of this particular lawsuit, in his original petition, Dickson alleged the defendants had conspired together to contact Willis and convince him to drop the appeal of the 2010 Northern District decision to the Tenth Circuit. Further, Dickson did not allege below or here what further discovery could provide evidence of damages when all of Willis's claims have been determined to be precluded. Accordingly, we cannot conclude the trial court abused its discretion by failing to grant Dickson's request for continuance.

We overrule Dickson's first issue.

### OBJECTIONS AND MOTION TO STRIKE

After Fellers Snider filed no-evidence and traditional summary-judgment motions, Dickson filed responsive motions, to which he attached his affidavit and other exhibits. Fellers

Snider objected and sought to strike Dickson's responses, affidavit, and exhibits. On appeal, Dickson complains the trial court failed to comply with local rules requiring an opportunity to cure any defects in his evidence.

We need not consider whether the trial court erred by granting Fellers Snider's objections and motion to strike. As detailed above, even considering Dickson's affidavit in its entirety and the emails produced by the PSO and Fellers Snider, Dickson is unable to escape the fact the federal district court's judgment precludes the claims underlying his own. We overrule his second issue.

## CONCLUSION

We affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

141575F.P05

–15–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WILLIAM T. DICKSON, Appellant

No. 05-14-01575-CV        V.

BNSF RAILWAY COMPANY AND
FELLERS SNIDER BLAKENSHIP
BAILEY & TIPPENS, P.C., Appellees

On Appeal from the 193rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC 12-02048.
Opinion delivered by Justice Schenck,
Justices Lang-Miers and Brown
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees BNSF RAILWAY COMPANY AND FELLERS
SNIDER BLAKENSHIP BAILEY & TIPPENS, P.C. recover their costs of this appeal from
appellant WILLIAM T. DICKSON.

Judgment entered this 6th day of November, 2015.