# IN THE SUPREME COURT OF TEXAS

═══════════

No. 11-0494

═══════════

HOMER MERRIMAN, PETITIONER,

v.

XTO ENERGY, INC., RESPONDENT

═══════════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE TENTH DISTRICT OF TEXAS

═══════════════════════════════════════════════════════

**Argued February 5, 2013**

JUSTICE JOHNSON delivered the opinion of the Court.

This case involves the question of whether a mineral lessee failed to accommodate an existing use of the surface when the lessee drilled a gas well. Claiming that the lessee did not accommodate his existing cattle operation, the surface owner sought an injunction requiring the well to be moved. The trial court granted summary judgment for the mineral lessee and the court of appeals affirmed. We affirm the judgment of the court of appeals.

## I. Background

Homer Merriman, a pharmacist by occupation, owns the surface estate of an approximately 40-acre tract (the tract) in Limestone County. His home and a barn are on the tract, and he has installed permanent fencing and corrals which he uses in a cattle operation. Merriman leases several

other tracts of land that he also uses in his cattle operation. Once a year he brings his cattle to the 40-acre tract in a "roundup" to sort and work them. The sorting and working activities involve using temporary corrals and catch-pens in conjunction with the permanent fencing and structures.

XTO Energy, Inc., the lessee of the tract's severed mineral estate, contacted Merriman in September 2007 about locating a gas well on the tract. Merriman claimed that the proposed location would interfere with his cattle operation, so he opposed it. Despite Merriman's opposition, XTO proceeded to construct a well site and drill the well. When XTO began construction of the well site Merriman filed suit seeking temporary and permanent injunctions enjoining it from drilling the well. After the well was drilled he amended his pleadings and sought a permanent injunction requiring XTO to remove it. Merriman's claim for injunctive relief was based on his assertion that XTO failed to accommodate his existing use of the surface for the annual sorting and working part of his cattle operation so XTO's acts exceeded its rights in the mineral estate and constituted a trespass.

Both parties filed motions for summary judgment, but because of our disposition of the appeal we need address only one of the grounds in XTO's combined traditional and no-evidence motion.[1] Among other grounds, XTO asserted that Merriman could not produce evidence XTO failed to accommodate Merriman's use of the surface, thus there was no evidence of the "wrongful act" Merriman alleged would support injunctive relief.

---

[1] In XTO's motion, it claimed that injunctive relief was not appropriate, Merriman could not carry his burden of proof for breach of the accommodation doctrine, the express language of the mineral reservation in the warranty deed negated the implication of the accommodation doctrine, and there is no cause of action for exclusion of a lessee from the leased premises. It also asserted there was no admissible, probative evidence to establish any element of Merriman's cause of action for breach of contract or injunctive relief.

In Merriman's No-Evidence Motion for Summary Judgment, he argued that XTO did not produce any evidence to support its affirmative defenses of waiver, estoppel, laches, and failure to mitigate damages.

The trial court granted summary judgment for XTO without stating its reasons. The court of appeals affirmed. In concluding there was no evidence that XTO failed to accommodate Merriman's existing use, the appeals court focused on whether Merriman produced evidence that he did not have any reasonable alternative agricultural uses for the 40-acre tract, and also whether he produced evidence that relocating his sorting and working operations to the leased land was not a reasonable alternative. ___ S.W.3d ___, ___.

In arguing that the court of appeals erred, Merriman asserts that he is not required to show he cannot make any alternative agricultural uses whatsoever for the tract as required by the court of appeals. Rather, he argues, he is required to show only that he does not have reasonable alternatives for conducting his cattle operations. He maintains that he did so with competent, non-conclusory evidence. He further argues that the court of appeals erred by considering the availability of additional land he leased in determining whether he has reasonable alternatives for continuing his existing use of the single tract that he owns.[2]

## II. Law

### A. Summary Judgment

We review the granting of a motion for summary judgment de novo. *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012). When the trial court does not specify the grounds for its ruling, a summary judgment must be affirmed if any of the grounds on which judgment is sought are meritorious. *State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in U.S.*

---

[2] We received amicus curiae briefs from Texas Farm Bureau and Texas Oil and Gas Association.

*Currency*, 390 S.W.3d 289, 292 (Tex. 2013). When both parties move for summary judgment and the trial court grants one motion and denies the other, we review all the summary judgment evidence, determine all issues presented, and render the judgment the trial court should have. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

Merriman contends that we should treat XTO's motion as only a traditional one because XTO did not sufficiently segregate the grounds for the different types of motions. But XTO labeled its motion as a combined traditional and no-evidence motion, and as long as a motion clearly sets forth its grounds and otherwise meets the requirements of a no-evidence summary judgment motion, as XTO's did, it is sufficient as one. *Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004); *see* TEX. R. CIV. P. 166a(i). When a party moves for summary judgment on both traditional and no-evidence grounds as XTO did here, we first address the no-evidence grounds. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). That is because if the non-movant fails to produce legally sufficient evidence to meet his burden as to the no-evidence motion, there is no need to analyze whether the movant satisfied its burden under the traditional motion. *Id.* No-evidence summary judgments are reviewed under the same legal sufficiency standard as directed verdicts. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003). Under that standard, evidence is considered in the light most favorable to the nonmovant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). The nonmovant has the burden to produce summary judgment evidence raising a genuine issue of material fact as to each challenged element of its cause of action.

4

TEX. R. CIV. P. 166a(i); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206 (Tex. 2002). A

no evidence challenge will be sustained when

> "(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact."

*King Ranch*, 118 S.W.3d at 751 (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706,

711 (Tex. 1997)).

## B. The Accommodation Doctrine

A party possessing the dominant mineral estate has the right to go onto the surface of the land

to extract the minerals, as well as those incidental rights reasonably necessary for the extraction.

*Tarrant Cnty. Water Control & Improvement Dist. No. One v. Haupt, Inc.*, 854 S.W.2d 909, 911

(Tex. 1993); *Getty Oil Co. v. Jones*, 470 S.W.2d 618, 621 (Tex. 1971). The incidental rights include

the right to use as much of the surface as is reasonably necessary to extract and produce the minerals.

If the mineral owner or lessee has only one method for developing and producing the minerals, that

method may be used regardless of whether it precludes or substantially impairs an existing use of

the servient surface estate. *Haupt*, 854 S.W.2d at 911; *Getty Oil*, 470 S.W.2d at 622. On the other

hand,

> [i]f the mineral owner has reasonable alternative uses of the surface, one of which permits the surface owner to continue to use the surface in the manner intended . . . and one of which would preclude that use by the surface owner, the mineral owner *must* use the alternative that allows continued use of the surface by the surface owner.

*Haupt*, 854 S.W.2d at 911-12.

To obtain relief on a claim that the mineral lessee has failed to accommodate an existing use of the surface, the surface owner has the burden to prove that (1) the lessee's use completely precludes or substantially impairs the existing use, and (2) there is no reasonable alternative method available to the surface owner by which the existing use can be continued. *See Getty Oil*, 470 S.W.2d at 628 (op. on reh'g); *see also Humble Oil & Refining Co. v. Williams*, 420 S.W.2d 133, 135 (Tex. 1967); *Davis v. Devon Energy Prod. Co., L.P.*, 136 S.W.3d 419, 424 (Tex. App.—Amarillo 2004, no pet.). If the surface owner carries that burden, he must further prove that given the particular circumstances, there are alternative reasonable, customary, and industry-accepted methods available to the lessee which will allow recovery of the minerals and also allow the surface owner to continue the existing use. *Haupt*, 854 S.W.2d at 911-12.

In this case the court of appeals' decision turned on its conclusion that Merriman failed to produce competent evidence that he had no reasonable alternative method by which to continue his cattle operation. As to that element of the accommodation doctrine, a surface owner's burden to prove that his existing use cannot be maintained by some reasonable alternative method is not met by evidence that the alternative method is merely more inconvenient or less economically beneficial than the existing method. *See Getty Oil*, 470 S.W.2d at 628 (op. on reh'g) ("We have not held, as some have stated, that the issue is a question of inconvenience to the surface owner."); *Williams*, 420 S.W.2d at 135 ("[The surface owner's] testimony that the road [the mineral lessee built] interfered with his grazing operations and was a nuisance to him is not evidence that the road was not reasonably necessary."). Rather, the surface owner has the burden to prove that the inconvenience

6

or financial burden of continuing the existing use by the alternative method is so great as to make the alternative method unreasonable. *Getty Oil*, 470 S.W.2d at 628 (op. on reh'g).

### III. Discussion

In determining whether the trial court properly granted summary judgment, the court of appeals primarily focused on two considerations. One was whether Merriman could make *any* alternative use of the surface for general agricultural purposes that was not impracticable or unreasonable. ___ S.W.3d at ___. Specifically, the court of appeals said that under the accommodation doctrine "[t]he surface owner must show that any alternative uses of the surface, other than the existing use, are impractical and unreasonable under all of the circumstances." *Id.* at ___. The court held that "[t]here was no violation of the accommodation doctrine because Merriman had reasonable means of developing his land for agricultural purposes." *Id.* at ___. The other was the availability to Merriman of several tracts of land he leased when determining whether he presented evidence that he did not have reasonable, alternative methods of conducting his cattle operation. *Id.* We agree with the court of appeals' conclusion that XTO was entitled to summary judgment, although as we explain, we do not completely agree with its analysis.

We first address whether part of Merriman's burden was to present evidence that he could not alternatively conduct his cattle operation on tracts that he held by short term leases. We conclude that it was not.

The accommodation doctrine focuses on balancing the respective rights of the parties. *Haupt*, 854 S.W.2d at 911. Requiring a surface owner to show that it could not alternatively conduct its existing use on land held by short term leases would too greatly alter the balance between those

who possess and have established a use of the surface estate and those who possess the mineral estate. Such a requirement would reduce the mineral owner's obligation to accommodate existing uses of the surface because of the fortuity that the surface owner had separate holdings, even though the holdings might soon be lost by the leases lapsing or being terminated. Under those circumstances the mineral owner could obtain long-term benefit from use of the surface while forcing the surface owner to relocate an existing use to a place where the use might be conducted for only a short term. Accordingly, the court of appeals improperly considered the land leased by Merriman in determining whether he produced evidence that he had no reasonable alternatives to continue his cattle operation.

We next consider whether Merriman was required to produce evidence that he had no reasonable alternatives for *any* type of agricultural use on the tract he owned, or whether he was required to produce only evidence that he had no such alternatives for his cattle operation. In doing so, it is clear that no bright lines can be drawn by which to categorize "existing uses" of surface estates. The issue is one of fairness to both parties in light of the particular existing use by the surface owner and the principle underlying the accommodation doctrine: balancing the rights of surface and mineral owners to use their respective estates while recognizing and respecting the dominant nature of the mineral estate. *See Haupt*, 854 S.W.2d at 911 ("The accommodation doctrine, also known as the 'alternative means' doctrine, was first articulated in *Getty* as a means to balance the rights of the surface owner and the mineral owner in the use of the surface . . . ."); *Getty Oil*, 470 S.W.2d at 627-28 (op. on reh'g) ("[I]n determining the issue of whether a particular manner of use of the dominant mineral estate is reasonable or unreasonable, we cannot ignore the condition

8

of the surface itself and the uses then being made by the servient surface owner."). Here, Merriman's use can, with fairness to both parties, be classified more narrowly than the broad "agricultural" category applied by the court of appeals. His use of the land was for a cattle operation and its essential parts. That use is what must be considered in balancing his rights with those of XTO. *See Getty Oil*, 470 S.W.2d at 627-28 (op. on reh'g). Therefore, we consider only whether Merriman produced legally sufficient evidence that he did not have any reasonable alternatives for conducting his cattle operations on the tract, not whether he produced evidence that he had no reasonable alternatives for general agricultural uses.

To begin with, there is some evidence that the roundup, sorting, working, and loading of the cattle were essential parts of Merriman's cattle operations. Thus, we look to see whether he met his burden to produce evidence that he did not have any reasonable alternatives for continuing his cattle operation, including those essential aspects, on the tract.

In arguing that he met his burden, Merriman references parts of the record he says show that the well's location interferes with the placement of his temporary corrals, interferes with the flow of his working stock pens, and makes his cattle sorting operation practically impossible to accomplish using the existing corrals and pens. In his affidavit he explained that

> XTO's activities on my property . . . prevent me from conducting my cattle operation. . . . The corral that is located close to the barn is now useless due to the fact the corral cannot be expanded to its full size and usefulness. Right now I can not use the pens because the fence around the well site blocks access to the pens. The wellhead, and other production equipment are located in the area where loading takes place prior to the livestock being moved . . . . I have attempted to devise a way to re-configure my corrals and catch-pens so as to conduct my cattle operation on my property with the well present. My efforts were unsuccessful.

9

Merriman asserts that the foregoing parts of his affidavit contain facts supporting his conclusion that his cattle operation has been precluded, and that the court of appeals was wrong when it said that "Merriman's affidavit and deposition testimony offer conclusory statements on the well site's effect on his cattle operation." ___ S.W.3d at ___. But, even if Merriman's statements contain sufficient factual underpinnings so they are not entirely conclusory, they do not provide facts or evidence showing that there was no reasonable alternative method for him to conduct the sorting, working, and loading activities somewhere else on the tract. He did not explain why corrals and pens could not be constructed and used somewhere else on the tract; and if they reasonably could be, then his existing use was not precluded.

Moreover, when he was asked at his deposition why he could not reconfigure the existing pens where he worked the cattle he stated that the pens were not portable. He responded that it was "easier" to add temporary pens to the area where he has permanent fencing and non-portable pens and that "[t]his arrangement that I have on this location has been -- through a number of years I have improved it, I have worked on it, and this plan as I have now works the best for me." In his pleadings and in a letter from his attorney to XTO he claimed that the space taken up by XTO's well interferes with the sorting operation because it causes a "need for more phases to occur, increasing the transportation costs and time spent, and causing other inefficiencies that will result in lost profits." In his deposition testimony he agreed that this statement was correct. He also testified that he owned a portable squeeze chute which could be used to work the cattle instead of using the pens and that the cost of constructing corrals and working pens on his leased land would be approximately

$5,000. Yet he did not discuss whether he could construct corrals and pens in another location on the tract, or if he could, what it would cost.

Merriman's affidavit and deposition testimony, even assuming they were not entirely conclusory, are evidence only that XTO's well precludes or substantially impairs the use of his existing corrals and pens, creates an inconvenience to him, and will result in some amount of additional expense and reduced profitability because to continue his cattle operation he will have to build new corrals or conduct his operations in more phases. Evidence that the mineral lessee's operations result in inconvenience and some unquantified amount of additional expense to the surface owner does not rise to the level of evidence that the surface owner has no reasonable alternative method to maintain the existing use. *See Getty Oil*, 470 S.W.2d at 623; *Williams*, 420 S.W.2d at 135. Thus, Merriman did not produce evidence sufficient to raise a material fact issue as to part of the initial element on which he had the burden of proof: that he had no reasonable alternative means of maintaining his cattle operations on the 40-acre tract. *See Wal-Mart Stores, Inc. v. Merrell*, 313 S.W.3d 837, 839-40 (Tex. 2010); *King Ranch*, 118 S.W.3d at 755.

## IV. Conclusion

Merriman relied on his claim that XTO failed to accommodate his existing use to establish that XTO was committing a continuing wrongful act entitling him to permanent injunctive relief. Even assuming that the failure of XTO's operations to accommodate Merriman's existing use would have been sufficient to support injunctive relief, a contention XTO disputes and one we do not address, Merriman failed to raise a material fact issue as to whether XTO failed to accommodate his

11

use.  Accordingly, the court of appeals did not err by affirming the trial court's summary judgment and we affirm the judgment of the court of appeals.

_____
Phil Johnson
Justice

**OPINION DELIVERED:**  June 21, 2013