**Affirmed in Part, Reversed and Rendered in Part, and Memorandum Opinion filed August 1, 2024**



In The

# Fourteenth Court of Appeals

---

### NO. 14-23-00224-CV

---

### PAPPAS HARRIS CAPITAL, LLC, Appellant

### V.

### ADVANCE HYDROCARBON CORPORATION, CORY HALL, AND MARK GANDY, Appellees

---

**On Appeal from the 295th District Court
Harris County, Texas
Trial Court Cause No. 2020-10778**

---

## M E M O R A N D U M   O P I N I O N

Advance Hydrocarbon Corporation sought to sell certain trucking assets related to its saltwater disposal business. Pappas Harris Capital, LLC was a potential purchaser and expressed an interest in acquiring those assets. Following months of negotiations, the parties had not reached an agreement on several terms, and the proposed asset purchase sale never closed. Pappas then filed suit on the failed

business transaction. The live petition filed by Pappas names Advance, Aqua Terra Water Management a/k/a Aqua Terra U.S. Holdings, L.L.C.,[1] Cory Hall, and Mark Gandy as defendants (collectively, "Advance").[2] Advance filed its hybrid motion for summary judgment on all of Pappas' claims. The trial court granted the motion and rendered judgment that Pappas take nothing, the case proceeded to a nonjury trial on the remaining issue of attorney's fees and expenses, and the trial court signed a final judgment awarding Advance attorney's fees and expenses from Pappas.

In four issues, Pappas challenges the trial court's ruling on Advance's hybrid motion for summary judgment, the trial court's award of attorney's fees, and the denial of its motion to compel. For the reasons explained below, we affirm the trial court's ruling on the hybrid motion for summary judgment and denial of the motion to compel but reverse and render judgment on the trial court's award of attorney's fees and expenses.

### *Background*

Advance owned a saltwater trucking fleet used to haul waste saltwater from oil and gas production to saltwater disposal wells in the Northern Eagle Ford Basin. In 2018, Advance sought to sell certain assets relating to its saltwater disposal business and engaged Johnson Rice & Company as a broker and financial advisor. Johnson Rice solicited several potential purchasers, including Pappas.

---

[1] Pappas identifies Aqua Terra U.S. Holdings as an appellee in its notice of appeal and appellate brief. This court previously issued an opinion dismissing Pappas' claims against Aqua Terra U.S. Holdings for want of personal jurisdiction. *See Aqua Terra U.S. Holdings, LLC v. Pappas Harris Cap., LLC*, No. 14-20-00858-CV, 2022 WL 3365265, at *6 (Tex. App.—Houston [14th Dist.] Aug. 16, 2022, no pet.) (mem. op.). The mandate issued on October 25, 2022. Accordingly, Aqua Terra U.S. Holdings is not a party to this appeal.

[2] Hall is the CEO of Advance and the President and CEO of Aqua Terra. Gandy is the CFO of Advance.

On August 1, 2018, Advance entered into a Confidentiality Agreement (the "Agreement") with Pappas. Gandy signed the Agreement on behalf of Advance, and Josh Harris signed the Agreement on behalf of Pappas.[3] The purpose of the Agreement was to obtain certain confidential information "in connection with a possible business transaction to acquire [Advance]'s business." Part of the confidential information acquired by Pappas included a Confidential Information Memorandum (the "Memorandum"). The Memorandum listed assets Advance proposed to sell and was prepared "to assist interested parties in making their own initial valuation" but did not purport "to contain all information that a prospective purchaser may desire."

After reviewing the Memorandum, Pappas prepared a Letter of Intent (the "LOI"), which was signed by Hall on September 24, 2018. The parties later executed two amendments to the LOI with the sole purpose of extending the closing date. In its relevant parts, the LOI provided that it was "not intended to create a binding contract" and was "subject to the execution of a mutually acceptable asset purchase agreement." Pappas proposed to purchase Advance's business and assets, including a water disposal contract provided by Aqua Terra, for $2 million with $500,000 due in cash at closing and the remaining $1.5 million in the form of a note payable at the end of three to four years. Following the execution of the LOI, Pappas began to conduct due diligence regarding the proposed transaction. Pappas discovered that some of the assets identified in the Memorandum could not be located or were in poor condition. Pappas raised the issue with Advance, and the parties attempted to locate the missing assets.

---

[3] Jason Pappas and Harris are equal owners of Pappas.

Advance prepared the first draft of the asset purchase agreement dated November 13, 2018. This draft agreement was never executed by the parties, presumably because there were outstanding unresolved issues. The parties agreed to conduct an in-person meeting on December 10 to discuss the proposed transaction. The parties apparently discussed each issue with the asset purchase agreement, but there were still unresolved concerns at the conclusion of the meeting. Over the next few days, the parties exchanged emails regarding the missing assets and discussed determining a fair value. Ultimately, the parties did not reach an agreement, and Advance terminated the proposed transaction on December 14.

Pappas initially filed suit against Advance, Aqua Terra, and Bregal Partners in federal court.[4] In its petition, Pappas alleged causes of action for breach of contract, promissory estoppel, fraud, and negligent misrepresentation. Pappas later amended its petition removing Bregal as a defendant and including Aqua Terra Water Management a/k/a Aqua Terra U.S. Holdings, L.L.C., Hall, and Gandy as defendants.[5] In its amended petition, Pappas alleged causes of action for breach of contract, negligent misrepresentation, promissory estoppel, fraud/fraudulent inducement, and unjust enrichment.

Advance filed its combined no-evidence and traditional motion for summary judgment on all of Pappas' claims. The trial court granted the motion on August 16, 2022. The only remaining issue was Advance's claim for attorney's fees and expenses, which was tried at a bench trial. The trial court awarded Advance, among

---

[4] Pappas alleged that Bregal is a portfolio company for Advance. Bregal moved to dismiss Pappas claims for lack of personal jurisdiction. *See Pappas Harris Cap., LLC v. Bregal Partners, L.P.*, No. 20-CV-6911, 2021 WL 3173429, at *2 (S.D.N.Y. July 27, 2021). The federal court ultimately dismissed Pappas' claims against Bregal pursuant to the *Colorado River* doctrine and denied Bregal's plea to the jurisdiction as moot. *See id.*, at *12. Bregal is not a party to this appeal.

[5] As noted, Aqua Terra U.S. Holdings is not a party to this appeal.

other things, $593,009 as reasonable and necessary attorneys' fees and $95,782.01 as reasonable and necessary expenses.

## *Issues Presented*

Pappas presents four issues for review:

1. Did the trial court err by granting Advance's traditional motion for summary judgment?

2. Did the trial court err by granting Advance's no-evidence motion for summary judgment?

3. Did the trial court err by awarding Advance attorney's fees and expenses?

4. Did the trial court err by denying Pappas' motion to compel documents claimed as privileged?

## *Summary Judgment*

A grant of summary judgment is subject to de novo review by an appellate court. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In making the required review, we deem as true all evidence which is favorable to the non-movant, we indulge every reasonable inference to be drawn from the evidence, and we resolve any doubts in the non-movant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When the trial court does not specify the basis for its ruling, we must affirm a summary judgment if any of the grounds on which judgment was sought are meritorious. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

When, as here, a party moves for both traditional and no-evidence summary judgments, we first consider the no-evidence motion. *First United Pentecostal Church of Beaumont, d/b/a the Anchor of Beaumont v. Parker*, 514 S.W.3d 214, 219

5

(Tex. 2017) (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)). "If the non-movant fails to meet its burden under the no-evidence motion, there is no need to address the challenge to the traditional motion as it necessarily fails." *Id.* (citing *Merriman*, 407 S.W.3d at 248). No-evidence summary judgments are reviewed under the same legal sufficiency standard as directed verdicts. *Merriman*, 407 S.W.3d at 248. Under that standard, evidence is considered in the light most favorable to the non-movant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *Id.* A no-evidence challenge will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Id.*

To prevail on a no-evidence motion for summary judgment, the movant must first allege there is no evidence of one or more specified elements of a claim or defense on which the non-movant would have the burden of proof at trial. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam); *see also* Tex. R. Civ. P. 166a(i). Once raised, the non-movant must produce summary judgment evidence raising a genuine issue of material fact. Tex. R. Civ. P. 166a(i). Claims that survive the no-evidence review will then be reviewed under the traditional standard. *Parker*, 514 S.W.3d at 219–20. To be entitled to traditional summary judgment, a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Once the movant produces evidence entitling it to summary judgment, the burden shifts to the non-movant to present evidence raising a genuine issue of material fact. *Walker v.*

6

*Harris*, 924 S.W.2d 375, 377 (Tex. 1996). A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).

We begin our analysis with Pappas' second issue alleging that the trial court erred in granting Advance's no-evidence summary judgment. As stated, Pappas asserts claims against Advance for breach of contract, promissory estoppel, negligent misrepresentation, fraud/fraudulent inducement, and unjust enrichment in its live petition. However, in its opening brief, Pappas abandons its challenge to the trial court's ruling on its promissory estoppel and negligent misrepresentation claims. Our review is therefore limited to the following claims: breach of contract, fraud/fraudulent inducement, and unjust enrichment.

## I.    Breach of Contract

Pappas advances two breach of contract claims against Advance. First, Pappas alleges that it entered into an oral contract with Advance at the in-person meeting on December 10. Second, Pappas claims that it entered into a written contract pursuant to the terms of the LOI, maintaining that the parties agreed to "work together in good faith to consummate the transaction contemplated." In its summary judgment motion, Advance contends that Pappas could produce no evidence for any element with respect to either breach of contract claim; that is, the existence of a valid contract, Pappas' performance, Advance's breach, or damages. *See Arshad v. Am. Express Bank, FSB*, 580 S.W.3d 798, 804 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (setting forth elements for breach of contract claim). We first analyze the LOI to determine whether Pappas produced evidence for each element of its breach of contract claim and then turn to the alleged oral agreement to evaluate the same.

7

## A. LOI

Pappas contends that the LOI is a valid and enforceable contract to "work together in good faith to consummate the transaction." The parties executed the LOI on September 24, 2018. In its relevant parts, the LOI provides:

> This Letter of Intent is intended to set forth the general terms and conditions under which PappasHarris Capital LLC, a Texas limited liability company, or a wholly-owned direct or indirect subsidiary of PappasHarris Capital, LLC ("PappasHarris"), would be willing to acquire the business and assets of Advance Hydrocarbon Corporation ("Seller"). This letter is not intended to create a binding contract on either Seller or PappasHarris (except as specifically provided herein), but is intended to evidence our mutual willingness to work together in good faith to consummate the transaction contemplated hereby on the terms set forth herein. . . . This transaction would be subject to the execution of a mutually acceptable asset purchase agreement, containing provisions consistent with those set forth preliminary in this letter and with seller-friendly representations, warranties, covenants, indemnities, and conditions to closing (as generally presented in the bid draft agreement provided by Seller, as modified in accordance with this letter and in response to our confirmatory due diligence review).

As an initial matter, we note that Pappas correctly identifies the elements necessary for a breach of contract claim in its summary judgment response but fails to provide any evidence regarding each of the required elements. *See Arshad*, 580 S.W.3d at 804. In the absence of any summary judgment evidence raising a genuine issue of material fact, Pappas' claim necessarily fails. *See* Tex. R. Civ. P. 166a(i) (providing that after a party moves for summary judgment on the ground that there is no evidence, the court must grant the motion unless the non-movant produces summary judgment evidence raising a genuine issue of material fact). However, for the sake of argument, we nevertheless discuss Pappas' "good faith" argument.

In determining whether the LOI is an enforceable contract, we find this court's opinion in *K. Griff Investigations, Inc. v. Cronin* to be particularly instructive. 633 S.W.3d 81 (Tex. App.—Houston [14th Dist.] 2021, no pet). In *Cronin*, this court analyzed the El Paso Court of Appeals' opinion in *Karns v. Jalapeno Tree Holdings, L.L.C.*, 459 S.W.3d 683 (Tex. App.—El Paso 2015, pet. denied):

> In *Jalapeno Tree*, the parties signed a letter of intent that: identified assets to be sold and their proposed valuation; demonstrated an agreement that, in consideration of an earnest money deposit and mutual promises to negotiate confidentially and in good faith, the seller agreed to refrain from entertaining other offers for a certain period; and conditioned completion of the underlying transaction on the achievement of a subsequent, definitive agreement. . . . Negotiations stalled after the letter of intent, and one party terminated the LOI, prompting the other party to sue for breach of the LOI. However, the court concluded that the letter of intent was not sufficient to establish a sales contract because the letter lacked a mutual intent to be bound. . . . Because the letter of intent included a condition precedent that "absolutely must be fulfilled before either party is bound to the sale," the sales provisions were not binding.

*Cronin*, 633 S.W.3d at 89–90. This court held that even if the LOI contained all terms essential to a purchase agreement, it was unenforceable because there were conditions precedent that must be fulfilled before either party was bound to the sale covenants in the LOI. *Id.* at 90. The case before us is remarkably similar to *Cronin*.

In this case, the record conclusively demonstrates that one or more of the condition precedents never occurred. We are therefore bound by this court's precedent in *Cronin*. Under that precedent, the LOI before us is not an enforceable contract, and Pappas cannot recover on its breach of contract claim because there are unfulfilled conditions. *See id.* The LOI clearly provided that the "transaction would be subject to the execution of a mutually acceptable asset purchase agreement." This was a condition precedent that must be fulfilled before either party was bound. *See*

*Allstate Ins. Co. v. Irwin*, 627 S.W.3d 263, 270 (Tex. 2021) ("A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement.") (quoting *Dillon v. Lintz*, 582 S.W.2d 394, 395 (Tex. 1979)); *see also Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010) ("A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation.") (quoting *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992)). Though Pappas alludes to a revised asset purchase agreement that the parties purportedly intended to sign, Pappas has not produced any evidence that a mutually acceptable asset purchase agreement was actually executed by the parties.

To the extent that Pappas suggests that the LOI is an enforceable contract to negotiate in the future, agreements like the LOI to negotiate toward a future contract are not legally enforceable. *See Cronin*, 633 S.W.3d at 90 (citing *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 242 (Tex. 2016)). And, Texas courts have held that this is true "even if the party agreed to negotiate in good faith." *Id.* (citing *Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S.W.3d 362, 371 (Tex. 2019)).

Our review of the record indicates that the terms of the LOI clearly state that it was not intended to create a binding contract and required the execution of a mutually acceptable asset purchase agreement. Pappas has provided no evidence establishing otherwise and therefore has failed to produce summary judgment evidence raising a genuine issue of material fact that it entered into a written contract pursuant to the terms of the LOI. *See* Tex. R. Civ. P. 166a(i). We now review whether the alleged oral agreement is an enforceable contract.

**B. Oral Agreement**

10

As its other breach of contract claim, Pappas alleges that the parties entered into an oral agreement during a meeting on December 10. The day before the meeting, Pappas sent an email to Advance listing several items that needed to be addressed "in getting this deal closed." Some of the areas of concern were missing assets and changes to the asset purchase agreement. During the meeting, the parties apparently reviewed each item of the draft asset purchase agreement, and a revised asset purchase agreement was to be circulated prior to closing. Pappas insists that the agreement reached on December 10 was not an "agreement to agree" but an enforceable oral contract that was to be later memorialized with a revised asset purchase agreement.

Pappas' argument is by no means a model for clarity. On one hand, Pappas maintains that the supposed agreement reached at the meeting was an enforceable oral contract but does not provide any analysis concerning how it established the required elements. *See 2001 Trinity Fund, LLC v. Carrizo Oil & Gas, Inc.*, 393 S.W.3d 442, 449 (Tex. App.—Houston [14th Dist.] 2012, pet denied) (setting forth elements to create an enforceable contract). On the other hand, Pappas urges that the meeting was essentially the culmination of the parties' agreement and that the revised asset purchase agreement that was to be circulated was nothing more than a mere formality, thereby dismissing the terms set forth in the LOI. However, both theories fail as a matter of law for the same reason: the terms of the LOI provided that the transaction was subject to the execution of a mutually agreeable asset purchase agreement.

To prevail on a breach of contract claim, a party must establish, among other things, that a valid contract existed. *See Arshad*, 580 S.W.3d at 804. In order to create a valid contract, there must be (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the

11

terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *See 2001 Trinity Fund,* 393 S.W.3d at 449. The elements of a written contract are the same as for an oral contract and must be present for a contract to be binding. *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 555 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

As indicated, Pappas alleges that a contract was formed at the December 10 meeting but does not produce any evidence concerning the required elements to establish a contract. *See 2001 Trinity Fund,* 393 S.W.3d at 449. After Advance asserted that there was no evidence to support any of the necessary elements to create a valid contract, Pappas was required to produce summary judgment evidence raising a genuine issue of material fact to avoid summary judgment. *See* Tex. R. Civ. P. 166a(i).

Our review of the record reveals that the only offer made was the LOI (which was prepared by Pappas). The terms set forth by Pappas stated that the LOI was subject to the execution of a mutually agreeable asset purchase agreement. Pappas has not produced any evidence that a mutually agreeable asset purchase agreement was executed by the parties. *See Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex. App.—Amarillo 2008, pet. denied) ("An acceptance must be identical to the offer; otherwise, there is no binding contract."). Additionally, the record reveals that the December 10 meeting was a continuation of previous negotiations. In light of the terms set forth in the LOI, Pappas cannot now argue that the deal could be closed with a handshake or in some other manner that was not a mutually agreeable asset purchase agreement executed by both parties. *See 2001 Trinity Fund,* 393 S.W.3d at 449 (providing that an enforceable contract requires acceptance in strict compliance with the terms of the offer). Likewise, execution of the revised asset purchase agreement was not a mere formality but rather a condition necessary to close the

12

transaction. *See Irwin*, 627 S.W.3d at 270. There is no evidence that an asset purchase agreement was actually executed by both parties. Because Pappas did not establish that a valid contract was formed at the meeting, its breach of contract claim fails as a matter of law. *See Arshad*, 580 S.W.3d at 804 (providing that a party must establish, among other things, that a valid contract existed to prevail on a breach of contract claim).

To the extent that Pappas maintains that the agreement reached at the December 10 meeting was not an "agreement to agree," we disagree because there were still material matters open for future adjustment. *See Domingo*, 257 S.W.3d at 39. For instance, several assets were still missing, and the parties had to decide on replacement values for the assets. "It is well settled law that when an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree." *Fischer*, 479 S.W.3d at 237 (quoting *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000)); *see also McCalla v. Baker's Campground, Inc.*, 416 S.W.3d 416, 418 (Tex. 2013) ("Agreements to enter into future contracts are enforceable if they contain all material terms.").

For these reasons, the trial court did not err in rendering summary judgment on Pappas' breach of contract claims because Pappas failed to produce any summary judgment evidence raising a genuine issue of material fact. Tex. R. Civ. P. 166a(i).

## II. Fraud/Fraudulent Inducement

Pappas asserts fraud and fraudulent inducement claims against Advance, contending that Advance made multiple misrepresentations relied upon by Pappas. Advance argues that Pappas could not produce any evidence of the required elements for a fraud or fraudulent inducement claim.

13

To constitute actionable fraud it must appear (1) that a material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury. *In re FirstMerit Bank*, 52 S.W.3d 749, 758 (Tex. 2001). Fraudulent inducement is a "species of common-law fraud" that "arises only in the context of a contract." *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). Like a broader fraud claim, a fraudulent inducement claim requires proof that (1) the defendant made a material misrepresentation; (2) the defendant knew at the time that the representation was false or lacked knowledge of its truth; (3) the defendant intended that the plaintiff should rely or act on the misrepresentation; (4) the plaintiff relied on the misrepresentation; and (5) the plaintiff's reliance on the misrepresentation caused injury. *Id.* In a fraudulent-inducement claim, the "misrepresentation" occurs when the defendant falsely promises to perform a future act while having no present intent to perform it. *Id.* The plaintiff's "reliance" on the false promise "induces" the plaintiff to agree to a contract the plaintiff would not have agreed to if the defendant had not made the false promise. *Id.*

On appeal, Pappas identifies the following false representations that it supposedly relied upon: (1) Advance owned or maintained certain equipment listed in the Memorandum, (2) Advance had the authority and approval to enter into agreements, (3) the sale of the business and assets of Advance was approved for transfer, (4) Advance had the approval for a 90 to 120 day "look back" on the missing assets, and (5) Advance had the authority and approval to close the sale before the end of the year. We discuss each of these alleged misrepresentations in turn.

### A. Assets

14

Pappas first alleges that Advance made false representations about owning or maintaining various equipment and trucks as listed in the Memorandum because these assets were missing or unaccounted for. Advance contends, among other things, that there is no evidence that Pappas justifiably relied on any alleged representation regarding assets. Because justifiable reliance is an element of a fraud claim, we agree. *See JPMorgan Chase Bank, N.A. v. Orca Assets G.P.*, 546 S.W.3d 648, 653 (Tex. 2018).

To establish justifiable reliance, a plaintiff must show that he actually relied on the defendant's false representations and that his reliance was justifiable. *Id.* Ordinarily, justifiable reliance is a question of fact, but under some circumstances, a court may determine as a matter of law that reliance is not justifiable. *Id.* at 654. In making this determination, we view the entirety of the circumstances "while accounting for the parties' relative levels of sophistication." *Id.* at 656.

Reviewing the record, Advance states that its trucking division, TruckCo, operates with the following major pieces of equipment: (1) 57 tractor cabs, 7 winch trucks, and 1 bobtail truck; (2) 68 water disposal trailers and 2 utility trailers; (3) 181 flat bottom frac tanks; and (4) 45 pickup and utility trucks. Though Pappas contends that it relied upon the representations made in the Memorandum, it has failed to produce any evidence that it *justifiably* relied on said representations when the Memorandum expressly stated that "interested parties should conduct their own investigation and analysis of the Company." *See id.* at 655 (stating that a party may not rely on another's representation when there are "red flags" indicating further investigation is needed). As a prospective purchaser, Pappas knew that it should (and did) conduct its own investigation and analysis of Advance's business and assets. *See id.* at 654 ("A party cannot 'blindly rely' on a defendant's representation when the party's 'knowledge, experience, and background warrant investigation into any

15

representation[ ]' before relying on it.") (quoting *Shafipour v. Rischon Dev. Corp.*, No. 11-13-00212-CV, 2015 WL 3454219, at *8 (Tex. App.—Eastland May 29, 2015, pet. denied) (mem. op.)).

To the extent that Pappas attempts to rely on representations made at the December 10 meeting regarding the missing assets, such reliance was not justifiable, and Pappas did not suffer any injury when the transaction was terminated on December 14. *See also In re FirstMerit Bank*, 52 S.W.3d at 758 (stating that an actionable fraud claim requires, among other things, that an injury was suffered); *see also Orca Assets*, 546 S.W.3d at 653–54. Pappas has therefore failed to produce any summary judgment evidence raising a genuine issue of material fact. Tex. R. Civ. P. 166a(i).

### B. Authority to Enter Agreement

Pappas maintains that Advance made a material misrepresentation about its authority and approval to enter into the agreement. Pappas' argument is not a model for clarity, but it apparently complains of Hall's and Gandy's ability to sign any agreement in their respective capacities. Pappas' assertion, however, is not supported by the record. As mentioned, Hall is the CEO of Advance and the President and CEO of Aqua Terra, while Gandy is the CFO of Advance. Though Pappas cites to several documents where Hall signed as CEO of Advance and Gandy signed as CFO of Advance, Pappas fails to demonstrate the falsity of any alleged representation or that Hall and Gandy lacked authority to sign any agreements in their respective capacities. *See In re FirstMerit Bank*, 52 S.W.3d at 758 (providing that falsity is an element of fraud).

### C. Approved for Transfer

16

Pappas also claims that Advance misrepresented that the sale of its business and assets was approved for transfer to Pappas. Pappas relies on Gandy's testimony to support its claim, but Pappas' position is not supported by the record. Reviewing the record, the parties worked towards closing the transaction, but the parties never executed a mutually acceptable asset purchase agreement. After failing to reach an agreement on several unresolved issues, Advance terminated the proposed transaction. Pappas does not cite to any evidence demonstrating that Advance misrepresented that the sale of its business and assets was not approved for transfer to Pappas. *See id.* (providing that a material representation is an element of fraud).

### D. Look Back Agreement

Pappas next argues that Advance made a material misrepresentation about approval for a 90 to 120 day look back on the missing trucks and equipment, which would have afforded Advance the opportunity to find and deliver the missing equipment or provide a cash resolution for said missing equipment. In support of its position, Pappas cites to Harris' deposition, Advance's answers and objections to Pappas' first set of interrogatories, Glenn Gantt's deposition, John Hughett's deposition, and email correspondence following the December 10 meeting. However, this evidence does not create a genuine issue of material fact. *See* Tex. R. Civ. P. 166a(i). It merely demonstrates that a suggestion was made for the parties to move forward with closing and have a 90 to 120 day look back to either locate the missing assets or determine a fair value. Pappas has not provided any evidence concerning the falsity of the statement nor has it demonstrated that it suffered any injury when the proposed transaction was terminated prior to closing *See id.*; *see also Orca Assets*, 546 S.W.3d at 653–54.

### E. Closing

Finally, Pappas contends that Advance misrepresented authority and approval to close the sale before the end of the year. Pappas references two email exchanges: one email is authored by Harris, and the second email is authored by Hall. The email authored by Harris states that the parties would like to sign on or before December 21, but there is a lot of language the parties need to agree on in the asset purchase agreement. However, this correspondence is not a representation made by Advance. *See In re FirstMerit Bank*, 52 S.W.3d at 758. The email authored by Hall provides: "Goal is to sign APA by 12/21 and close by 12/31. We shall see." As with the other alleged misrepresentations, Pappas has failed to produce any evidence that Advance misrepresented authority and approval to close the sale before the end of the year. *See id.* Pappas merely points out that the parties intended to close before the end of the year but did not. *See Orca Assets*, 546 S.W.3d at 653–54.

Accordingly, the trial court did not err in dismissing Pappas' fraud claim against Advance because Pappas failed to produce any evidence raising a genuine issue of material fact. *See* Tex. R. Civ. P. 166a(i). As for Pappas' fraudulent inducement claim, we previously held that neither the LOI nor the alleged oral agreement at the December 10 meeting constituted a valid and enforceable contract between the parties. *See Cronin*, 633 S.W.3d at 90. Without a valid contract, Pappas' fraudulent inducement claim fails as a matter of law. *See Anderson*, 550 S.W.3d at 614.

### III.   Unjust Enrichment

Lastly, Pappas asserts that it provided more than a scintilla of evidence in support of its unjust enrichment claim against Advance. Advance counters that Pappas presented no evidence of fraud, duress, or taking of an undue advantage in Advance's decision to terminate the proposed transaction.

Unjust enrichment is an equitable doctrine that allows recovery in quasi-contract or restitution if a contemplated agreement is "unenforceable, impossible, not fully performed, thwarted by mutual mistake, or void for other legal reasons." *French v. Moore*, 169 S.W.3d 1, 11 (Tex. App.—Houston [1st Dist.] 2004, no pet.). It is typically found to apply where one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage. *Burlington N.R. Co. v. S.W. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. App.—Texarkana 1996), *aff'd sub nom S.W. Elec. Power Co. v. Burlington N. R.R.*, 966 S.W.2d 467 (Tex. 1998). A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

In its summary judgment response, Pappas insists, without citing any authority and relying on little evidence, that Advance "obtained a benefit through either fraud, or at the very least, the taking of an undue advantage which [Advance] ought not retain." Pappas asserts that Advance should not be allowed to retain the additional profit it earned from the future sale of Advance's business and assets in March 2021. Pappas also argues that Advance should not be able to retain the benefits it received from Pappas' due diligence investigation and accounting efforts.

Above, we already concluded that Pappas' fraud claim failed as a matter of law because Pappas failed to produce any evidence of the required elements. *See In re FirstMerit Bank*, 52 S.W.3d at 758. For this same reason, Pappas' unjust enrichment claim also fails because it failed to produce any evidence of duress or the taking of an undue advantage. *Heldenfels Bros.*, 832 S.W.2d at 41.

Accordingly, we overrule Pappas' second issue. Because Pappas' claims did not survive the no-evidence review, there is no need to address the challenge to the traditional motion as it necessarily fails. *See Parker*, 514 S.W.3d at 219 (citing

*Merriman*, 407 S.W.3d at 248). We therefore also overrule Pappas' first issue and turn to Pappas' third issue.

### *Attorney's Fees*

As its third issue, Pappas challenges the trial court's judgment awarding Advance's claim for attorney's fees and expenses pursuant to the Agreement. Pappas maintains that this case did not implicate the Agreement, and the award of attorney's fees was not otherwise authorized by contract. Pappas also complains that Advance failed to segregate fees and expenses for any potentially recoverable contractual claims and unrecoverable tort claims. We need not address whether Advance properly segregated fees and expenses because we hold that the attorney's fees are not authorized by the Agreement. *See Rohrmoos Venture v. UTSW DVA Healthcare*, LLP, 578 S.W.3d 469, 484 (Tex. 2019) (providing that attorney's fees are recoverable only if authorized by statute or contract).

Whether a party is entitled to attorney's fees is a question of law that we review de novo. *See Sunchase IV Homeowners Ass'n v. Atkinson*, 643 S.W.3d 420, 422 (Tex. 2022). "Texas follows the American rule on attorney's fees, which provides that, generally, 'a party may not recover attorney's fees unless authorized by statute or contract.'" *Wheelabrator Air Pollution Control, Inc. v. City of San Antonio*, 489 S.W.3d 448, 453 n.4 (Tex. 2016) (quoting *Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 915 (Tex. 2015)); *see also Rohrmoos*, 578 S.W.3d at 484.

In this case, it is undisputed that the parties executed the Agreement in August 2018. The Agreement was limited to obtaining confidential information in connection with a possible business transaction to acquire Advance. In its relevant parts, the Agreement provided that:

20

Each of the parties agrees that the prevailing party in any action or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby shall be entitled to recover its reasonable fees and expenses in connection therewith, including legal fees. . . . This Agreement contains the entire understanding between the parties relative to the protection of the Confidential Information and supersedes all prior written and oral communication between the parties about the Confidential Information.

Our review of the record demonstrates that Pappas claims against Advance did not arise out of or relate to the Agreement. *See generally Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017) (providing that a contract's plain language controls). Neither party has asserted any breach of contract claim pursuant to the Agreement nor has Advance incurred attorney's fees from defending against any breach of the Agreement. Advance cannot now claim that it is entitled to attorney's fees pursuant to the Agreement when the Agreement was not the "main issue" litigated. *See SEECO, Inc. v. K. T. Rock, LLC*, 416 S.W.3d 664, 674 (Tex. App.——Houston [14th Dist.] 2013, pet. denied) (holding defendant who prevailed on "main issue" was entitled to attorney's fees pursuant to contract provision). Indeed, Advance incurred attorney's fees defending against Pappas' breach of contract claims based on two theories: the LOI and the alleged oral agreement. And, we previously concluded that a valid and enforceable contract was not formed under either theory.

Accordingly, we sustain Pappas' third issue because Advance was not authorized to recover attorney's fees and expenses pursuant to the Agreement. We need not address the merits of Pappas' fee segregation claim because Advance was not authorized to recover attorney's fees under statute or contract. *See Wheelabrator*, 489 S.W.3d at 453 n.4.

***Motion to Compel***

In its fourth issue, Pappas alleges that the trial court erred in denying its motion to compel production of documents claimed as privileged or alternatively erred in denying its motion for in camera inspection. Pappas specifically complains of a draft of the revised asset purchase agreement referenced by Gandy in an email dated December 13, 2018. Advance withheld the draft, asserting that it was protected by attorney-client privilege. Pappas contends that it was entitled to production of the draft because Advance waived attorney-client privilege under the offensive use doctrine. Advance asserts that the trial court properly denied Pappas' motion to compel because the offensive use doctrine does not apply.

We review a trial court's ruling on a motion to compel discovery under an abuse of discretion standard. *See Johnson v. Davis*, 178 S.W.3d 230, 242 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Trial courts have broad discretion in matters of discovery. *Id.* Consequently, we will reverse a trial court's ruling on a motion to compel only when the court acts in an arbitrary and unreasonable manner, without reference to any guiding principles. *See Barnett v. Cty. of Dall.*, 175 S.W.3d 919, 924 (Tex. App.—Dallas 2005, no pet.).

The offensive use doctrine prohibits a plaintiff from maintaining evidentiary privileges that protect from discovery outcome-determinative information not otherwise available to a defendant. *See In re Exxon Mobil Corp.*, 389 S.W.3d 577, 580 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding [mand. denied]) (citing *Tex. Dep't of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 760–61 (Tex. 1995)). There are three factors relevant to this determination: (1) the party asserting the privilege must be seeking affirmative relief; (2) the privileged information is such that, if it is believed by the factfinder, in all probability it would be outcome determinative of the cause of action asserted; and (3) the disclosure of the confidential communication is the only means by which the aggrieved party may

obtain the evidence. *Id.* (citing *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex. 1993)).

As discussed, Advance sought to sell certain trucking assets related to their saltwater disposal business, and Pappas was a potential purchaser. The parties met in person on December 10 to discuss several unresolved items. The issues discussed at the December 10 meeting were to be later memorialized in a revised asset purchase agreement. Following the meeting, a draft of the revised asset purchase agreement was prepared, but Advance terminated the proposed transaction before the draft was ever circulated. After initiating its lawsuit, Pappas served its fifth set of production to Advance, seeking "the 'draft of the APA' as referenced in the email from Mark Gandy." Advance objected to the request on grounds of attorney-client privilege. Pappas maintains that Advance waived the claimed privilege because Advance used the privilege as a sword rather than a shield. Accordingly, we analyze the factors set forth in *Davis* to determine whether a waiver occurred.

To qualify as a claim for affirmative relief, a defensive pleading must allege that the defendant has a cause of action, independent of the plaintiff's claim, on which he could recover benefits, compensation, or relief, even though the plaintiff may abandon his cause of action or fail to establish it. *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 842 (Tex. 1990) (orig. proceeding) (citing *Gen. Land Office of Tex. v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 570 (Tex. 1990)). A request for attorney's fees in the defendant's answer, not made in connection with an affirmative claim alleging that the opposing party has independently committed a breach of the party's contract, does not constitute a claim for affirmative relief. *Thomas v. Cook*, 350 S.W.3d 382, 396 n.3 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (Hedges, C. J., dissenting).

23

In its amended petition, Pappas alleged claims for, among other things, breach of contract. As detailed above, Pappas breach of contract claims were based on an apparent oral agreement at the December 10 meeting and the LOI. Advance did not file a formal counterclaim in its amended answer, but it did allege several affirmative defenses and sought to recover reasonable fees and expenses, including its attorney's fees, pursuant to the Agreement. But, Advance did not allege an independent claim for attorney's fees based on any breach of contract by Pappas. Thus, if Pappas had abandoned its causes of action, then there would be no basis for the award of attorney's fees because Advance's request for fees and expenses is dependent on Pappas' claims. *See Millard*, 800 S.W.2d at 841.[6]

We conclude that the first prong of *Davis* is not satisfied, and therefore, that Advance did not attempt "offensive use" of the email and draft asset purchase agreement withheld on the grounds of attorney-client privilege. Because the first element was not satisfied, we need not discuss the application of the second and third prongs of the *Davis* test to the present action. We further decline to address whether the trial court erred in denying Pappas' motion for in camera inspection because Pappas does not provide any substantive argument or cite legal authority. *See* Tex. R. App. P. 38.1(i).

---

[6] Pappas relies on *Texas Department of Public Safety Officers Association v. Denton*, 897 S.W.2d 757, 761 (Tex. 1995), and *Alford v. Bryant*, 137 S.W.3d 916, 922 (Tex. App.—Dallas 2004, pet. denied), to support its position that it satisfied the first factor relevant to the offensive use doctrine set forth in *Davis. See Davis*, 856 S.W.2d at 163. But, neither authority is dispositive in this case. In *Denton*, the supreme court held that the affirmative relief element was satisfied because the plaintiff was seeking damages as a part of his claims. 897 S.W.2d at 761. Here, Advance did not seek damages; it sought to recover reasonable fees and expenses, including its attorney's fees. As a general rule, attorneys' fees are not recoverable as damages in and of themselves. *See, e.g., Tana Oil & Gas Corp. v. McCall*, 104 S.W.3d 80, 82 (Tex. 2003). In *Alford*, the plaintiff sought affirmative relief in the form of a money judgment. 137 S.W.3d at 922. In this case, Advance did not seek a money judgment.

Accordingly, we overrule Pappas' fourth issue.

### *Conclusion*

We conclude that the trial court did not commit reversible error in rendering summary judgment against Pappas on all its claims against Advance or denying Pappas' motion to compel. But, the trial court did commit reversible error in awarding Advance attorney's fees and expenses. We therefore reverse the trial court's attorney's fees and expenses award in favor of Advance and render judgment that Advance take nothing on its claims for attorney's fees and expenses. We affirm the remainder of the trial court's judgment.

/s/ Frances Bourliot
Justice

Panel consists of Chief Justice Christopher and Justices Bourliot and Spain.

25